J. Irwin Shapiro, J.
The indictment in this case charges the defendant with the crimes of forgery, second degree (three counts), criminally buying and receiving stolen and wrongfully acquired property as a felony, criminally concealing and withholding stolen and wrongfully acquired property as a felony, possessing a pistol loaded with ammunition as a felony, and possession of a pistol, a bludgeon and a set of metal knuckles as a misdemeanor. The subject matter of the forgery counts and the buying, receiving, concealing’ and withholding counts are “a quantity of airline tickets of the value of $2,567.72 owned by TBANS WORLD AIRLINES INC.”.
The defendant having moved “ for an order suppressing the use of any and all evidence seized in violation of this defendant’s constitutional rights and for other and further relief as justice may demand ” a hearing was ordered.
The proof discloses that the police obtained a search warrant from a Judge of the Criminal Court of the City of New York, based upon information allegedly furnished by a reliable informant that the defendant “ was in possession of jewelry which was proceeds of a crime, also a loaded gun and possible other contraband ”.
After the issuance of the search warrant, the defendant was taken into custody ‘ ‘ in the garage of the Summit Hotel ’ ’, in New York County, where he was frisked but “ nothing was found on his person ”. However, “ he was carrying an attaché case that is on the table here ”.
The attaché case was not then examined by the police but they informed the defendant that they “ had obtained a warrant to search his person and residence with night time endorsement ” and that ‘ ‘ we were going to proceed to his residence in Queens with or without him ”, after which they, the police and the defendant, “proceeded to Queens” with the police taking possession of the attaché case.
Upon arriving in Queens County, the police for the first time “ opened the attaché case ” and in it “ found one loaded gun and a large quantity of airline tickets ”.
In the house they ‘ ‘ found another loaded gun, pair of brass knuckles and a blackjack ”.
*9 At the hearing the defendant not only attacked the sufficiency of the evidence per se to warrant the search and seizure, but ■sought to fortify his attack by a contention that the warrant giving the basic right to search and seize was in itself void.
So far as is here material, the search warrant recites:
“ Proof by affidavit (or deposition) having been made this day before me by Detective James E. Mugan Shield #1928 assigned to the Safe, Loft and Truck Squad of the New York City Police Department that there is probable cause for believing that certain property The proceeds of various Larcenies and burglaries in the New York City area are being concealed on the person and in the premises of John V. Hendricks located at 97-20 72 Dr. Forest Hills, Queens. This property is being sought in violation of section 1308 and 1897 of the Penal Law, a felony.
“ You are therefore commanded, in the daytime or night time to make an immediate search of 97-20 72 Drive. Queens (Private House) occupied by John V. Hendricks and of the person of John V. Hendricks and of any other person who may be found to have such property in his possession or under his control or to whom such property may have been delivered, for Violation of section 1897 and 1308 of the Penal Law and if you find any such property or any part thereof to bring it before me ”.
The United States Constitution (4th Amdt.) provides that “ no Warrants shall issue, but upon probable cause * * * particularly describing the * * * things to be seized”. The New York State Constitution is to the same effect (art. I, § 12) and the implementing statute (Code Grim. Pro., § 797) provides for the “Form of search warrant” and requires that it “ describe property ” to be seized.
As a consequence, the courts have held that a search warrant must specify with particularity the product to be searched for and seized (United States v. Berkeness, 275 U. S. 149; Marron v. United States, 275 U. S. 192, 196) and that no leeway is permitted where fruits or instrumentalities (as distinguished from contraband) of a specified crime are involved (United States ex rel. Campbell v. Rundle, 327 F. 2d 153; People v. Montanaro, 34 Misc 2d 624, 627-628), because a warrant which lacks particularity as to the objects to be seized would in effect authorize a general exploratory search, an act expressly inhibited by both our Federal and State Constitutions (cf. Alioto v. United States of America, 216 F. Supp. 48).
It is obvious that the conclusory statement “proceeds of various Larcenies and burglaries ” and the additional statement *10 that “ This property is being sought in violation of section 1308 and 1897 of the Penal Law, a felony ’ ’ are both clearly insufficient to comply with the constitutional, statutory and decisional requirements that a warrant must describe the property to be seized. The affidavit used to obtain the search warrant states that the defendant ‘ ‘ has concealed on his person and in his residence [giving the address] a revolver for which he [defendant] has no Pistol Permit and a quantity of jewelry and other property which are the proceeds of larcenies and burglaries in the New York area.”
Thus, the warrant specified the contraband to be seized as being possessed by the defendant in violation of section 1897 of the Penal Law without detailing of what that contraband consists. The supporting affidavit, however, makes it clear that the contraband involved is “ a revolver for which he [defendant] has no Pistol Permit ”.
No case has been found which permits a search warrant to be supplemented by reading into it averments in the supporting affidavit, but, interpreting the requirement of warrant specification for what it is intended to be —a notice to the defendant of what the police have a right to search for and seize, I am holding that where the search warrant specifies contraband, though only through the medium of a Penal Law section, and the supporting affidavit describes what that contraband is, the two of them may be read together to determine what is, in fact, covered by the search warrant and what, therefore, may be searched for and seized. Such a holding, though not literally within the language of the wording of the two Constitutions, gives a defendant all the protection which he was intended to have and yet permits justice to be done to the people at large. Common sense should not be sacrificed to a wooden interpretation of words when the true meaning of what the Constitution intended to achieve can be accomplished without trespassing upon individual rights. Sinister coloration should not be ascribed to a procedure which is basically reasonable and which does not treat the search warrant as existing in a vacuum but recognizes it as part and parcel of the affidavit upon which it rests.
Under the circumstances, I hold that the revolver found in the defendant’s home may not be suppressed, since by combining the allegation in the search warrant of a violation of ‘ ‘ 1897 of the Penal Law” with the averment in the affidavit that the defendant “ has concealed on his person and in his residence * * * a revolver for which he has no Pistol Permit ”, there *11 was sufficient authority for the search of the defendant’s home and the seizure of the revolver found therein.
The question next arises whether the “ bludgeon [blackjack] and a set of metal knuckles [brass knuckles] ” which were found during the same search must be suppressed because they were not described either in the search warrant or in the supporting affidavit.
In Palmer v. United States (203 F. 2d 66 [1953]) the court held that weapons that might effect escape of persons arrested could be validly seized under a search warrant even though they were not particularly described therein.
In Johnson v. United States (293 F. 2d 539, cert. den. 375 U. S. 888) the court held that an officer engaged in a lawful search is not restricted to seizing only those items described in the warrant but may, in addition, seize unlisted items which are clearly the instrumentalities of crime.
In People v. Reinhardt (42 Misc 2d 45, 49-50), a case particularly in point, the search warrant authorized a search for confidential State Liquor Authority reports. During search of defendant’s home for the specified documents, the police found and seized a blackjack. The motion to suppress the blackjack was denied, the court saying: “It thus appears that police
officers, lawfully executing a search warrant for documents, saw a weapon, possession of which was presumptively unlawful, and a nuisance. The weapon — the blackjack- — -was not covered by the search warrant. But these were police officers; their duty was not limited to executing a search warrant. They had duties also in the preservation of the peace and the enforcement of the criminal laws including sections 1897 and 1899 of the Penal Law, relating to unlawful possession of weapons.”
Also directly in point is Harris v. United States (331 U. S. 145,155) in which the court, on a somewhat similar state of facts, said: “ Nothing in the decisions of this Court gives support to the suggestion that under such circumstances the law-enforcement officials must impotently stand aside and refrain from seizing such contraband material. If entry upon the premises be authorized and the search which follows be valid, there is nothing in the Fourth Amendment which inhibits the seizure by law-enforcement agents of government property the possession of which is a crime, even though the officers are not aware that such property is on the premises when the search is initiated.”
The police in this ease were not required to close their eyes to the existence of the blackjack and brass knuckles but, on the contrary, since they could not be legally possessed, the police were under a duty to seize them as contraband even though *12 they were nowhere mentioned in the search warrant or supporting affidavit. The motion, insofar as it seeks suppression of the bludgeon and metal knuckles which form part of the subject material of the seventh count of the indictment, is therefore denied.
The “ quantity of airline tickets ” found in the attache case and which is the subject matter of the forgery counts and the criminally buying, receiving, concealing and withholding counts must be suppressed for they are nowhere mentioned within the four corners of the search warrant or the supporting affidavit and clearly they do not come within the definition of contraband.
It is unnecessary to pass upon whether the revolver found in the attaché case should be suppressed for it is not the subject matter of any count of the indictment and a motion to suppress lies only when the property sought to be suppressed is the subject matter of a criminal proceeding. In any event, Queens County would have no jurisdiction to prosecute the defendant for its possession, because its presence in Queens County was brought about by its transportation from New York County by the police and not by the defendant. Any charge pertaining to that revolver must have its venue laid in New York County.
The fact that the court, albeit most reluctantly, finds it necessary to suppress $2,567.72 of allegedly stolen airline tickets, and is compelled to sail an uncharted .sea into virgin territory to sustain the seizure of the revolver, the blackjack and the brass knuckles, points up what occurs when search warrants and affidavits are drawn by persons not having the benefit of legal training. Suppression, unfortunately, obtains in cases of narcotics, the possession of dangerous weapons and other instrumentalities of crime by reason of deficiencies in either the search warrant or the supporting affidavit. It is high time that the police authorities adopt a policy for the drawing of such warrants and their supporting affidavits, or at least for the review thereof, by persons having some expertise in the field of legal documents. Too often such warrants for search and seizure, submitted and passed upon ex parte, do not receive the careful judicial scrutiny to which they are put when they are directly attached, with the result that many a good criminal case turns “sour” for the prosecution, an outcome which, while helpful to the criminal involved, scarcely aids in the promotion of true justice.
Although the testimony on the hearing in this case was taken on November 30, 1964, the final submission was only made this day. The motion is disposed of as above set forth.