**TYRONE, INC., a Virginia corporation, trading as Lee Art Theatre and Howard William Burtnett**

**v.**

**James B. WILKINSON, Commonwealth's Attorney for the City of Richmond, Va., and Frank S. Duling, Chief of Police for the City of Richmond, Va.**

Civ. A. No. 6051-R.

United States District Court
E. D. Virginia,
Richmond Division.

Jan. 15, 1969.

Joseph S. Bambacus, Richmond, Va., for plaintiffs.

James B. Wilkinson, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

This is an action brought by plaintiffs seeking injunctive relief from the seizure of motion pictures and from criminal prosecutions based on the alleged offense of obscenity.

The Court, having considered the pleadings, exhibits and statements of counsel, and the evidence of witnesses, finds as follows:

Jurisdiction of the Court is invoked under Title 42 United States Code § 1983.

Plaintiff is a corporation operating a a movie theater in the City of Richmond, within this district; the individual plaintiff is a resident of Richmond, Virginia, and was manager of the movie theater on October 21, 1968; the defendant, Wilkinson, is the prosecuting attorney for the City of Richmond, Virginia; and the defendant, Duling, is the Chief of Police for the said city.

On or about March 21, 1966, with the acquiescence of the defendant, Wilkinson, members of the Police Department, one of whom had not attended a movie theater for some five to ten years prior thereto, commenced a series of raids on the Lee Art Theatre, operated by the corporate plaintiff. In each instance the modus operandi would be for one or more police officers to view the films, prepare affidavits after consultation with the Commonwealth's Attorney, and secure a search warrant. In at least three instances in 1966 this procedure was followed, search warrants secured, and the officers seized certain films being shown by the corporate plaintiffs. The plaintiffs were prosecuted and found guilty in all three instances of having "exhibited in public a lewd and obscene motion picture." In one case the United States Supreme Court reversed the conviction; in a second, the Supreme Court of Appeals of Virginia has issued a writ of error and will hear the matter; and in the third, a judgment of guilt became final without any appeal.

As a result of one of the raids, the corporate petitioner was forced to expend a sum in excess of $1,500.00 to install temporary projection machinery and to repair and re-install original equipment which the police officers had seized as having been used for the commission of a crime.

It is uncontradicted that the seizure of all of the films was accomplished without any prior adversary hearing on the question of obscenity. This by reason of the defendant, Wilkinson's, view that the law doesn't require an adversary hearing prior to the seizure of the films in question. The Commonwealth's Attorney very frankly states to the Court that he does not intend to afford a prior adversary hearing in the event search warrants are secured for films which may be shown in the future unless and until, as he put it, he is satisfied that he is required to do so under the law

As a result of a viewing of a film being shown by the plaintiff corporation, affidavits were filed by certain police officers and other parties affirming that each affiant "had witnessed a movie at Lee Art Theatre, 934 W. Grace Street and found it to be obscene without redeeming social value and it goes substantially beyond community standards in the display of nudity and sex and the dominant theme or purpose appeals to the prurient interest," and upon their application a search warrant was issued, the theater raided, and the allegedly obscene films confiscated and delivered to the City Sergeant for the City of Richmond. There was admittedly no adversary hearing prior to either the issuance of a search warrant or the seizure of the films. It should be noted that the magistrate who issued the

search warrant likewise viewed the film prior to the issuance of said warrant.

Subsequent to said seizure, criminal informations were filed at the instance of the Commonwealth's Attorney, Wilkinson, charging the corporation and the plaintiff, Burtnett, with having unlawfully possessed, shown and exhibited in public a lewd and obscene motion picture in violation of the laws of Virginia. It would appear that the plaintiffs are' charged with having violated the statutory laws of Virginia in reference to obscenity. See Title 18.1–227, etc., Code of Virginia 1960.

The plaintiffs ask this Court for equitable relief directing that the defendants return the prints of the motion picture films seized as aforesaid, and ask the Court to restrain the defendants, and all persons in concert with them, from seizing any prints of movie films, or otherwise interfering with the exhibition of any films exhibited by plaintiffs, prior to a determination of obscenity in an adversary proceeding. In addition, plaintiffs ask the Court to restrain the defendants from the further prosecution of the plaintiffs pursuant to the criminal informations filed by the defendant, Wilkinson, in the Hustings Court of the City of Richmond.

Defendants have moved the Court to dismiss the complaint and in argument before the Court, in essence denied that they are bound by certain opinions of the Supreme Court of the United States.

 The facts are generally undisputed. It should be borne in mind that questions of abstention and of injunctive relief are not the same. See Dombrowski v. Pfister, 380 U.S. 479, 483, at 489, 85 S.Ct. 1116, 14 L.Ed.2d 22. Wherever federal courts sit, rights under the Federal Constitution are always a proper subject for adjudication. See Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

 The plaintiffs in the instant case allege a violation of Constitutional rights. The real issue is whether the procedures employed by the defendants are Constitutionally insufficient by their admitted failure to take appropriate steps to adequately safeguard against the suppression of non-obscene movie films. There can be no doubt but that it has certainly, since 1951, been settled that motion pictures are within the ambit of protection which the First Amendment, through the Fourteenth, secure to any form of "speech" or "the press." The establishment of the Constitutional guarantees of freedom of speech and press have, since the case of Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098, been consistently followed. [Note: Kingsley International Pictures Corp. v. Regents of University of State of New York, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959); Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964); Metzger v. Pearcy, 393 F.2d 202 (7 Cir. 1968).]

It should be noted that the Virginia law provides a method which, although not required by Virginia law, may be employed in order to afford an adversary hearing in proceedings against movie films alleged to be obscene. See 18.1–236.3 Va.Code 1960 and 1968 supplement 18.1–236.4.

The Court does not find it necessary to pass upon the Constitutionality of any Virginia statute, nor must this Court pass upon the alleged obscenity of the movie films in question.

Defendant, Wilkinson, has testified that he did not employ the procedures afforded under the Virginia statute aforementioned prior to acquiescing in the seizure on the grounds that he did not think it fair to subject one to a civil proceeding and then perhaps to subsequently prosecute.

 It is difficult for this Court to recognize the logic of subjecting a person first to a criminal prosecution, with the attendant notoriety, by reason of a desire not to put one to the difficulty of a civil proceeding. There is no doubt in this Court's mind but that the seizure of the films in the instant case, and the manner

in which it was done, falls short of due process. An informal gathering of police officers, prosecuting authorities, and a magistrate who issued a search warrant, by reason of their having purchased admission tickets to a theater and having viewed the film in question, does not amount to due process.

■ In order to properly protect the freedoms afforded by the First Amendment to the Constitution of the United States, there must be conformity to procedures that insure against the curtailment of Constitutionally protected expression which, as stated in the case of A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809, "is often separated from obscenity only by a dim and uncertain line."

■ The object of an adversary hearing is to insure that expression will not be suppressed without contest and justification. An adversary proceeding contemplates an opportunity for one to be afforded the protection of the First Amendment to the Constitution of the United States. Allegedly obscene publications or movies are not to be treated the same way as narcotics, gambling paraphernalia and other contraband. The legal rules governing the former are different from the latter. Metzger v. Pearcy, supra.

The defendants' argument that they are not bound by the decision of the A Quantity of Copies of Books v. Kansas holding of the United States Supreme Court, coupled with the defendant, Wilkinson's announced intention to continue the authorizing of the seizure of allegedly obscene motion pictures without affording the possessors and exhibitors of same a prior adversary hearing to determine if same are obscene, leaves this Court no alternative except to issue an appropriate injunction.

The freedom of press and expression, whether it be through newspapers or motion pictures, is too precious a freedom to permit the risk of suppression of non-obscene material simply because a law enforcement officer announces an intention not to afford a prior adversary hearing unless directed to do so by a Court, or his present interpretation of the law changes.

■ An appropriate order directing the defendants to cause to be returned the picture film seized on October 21, 1968, will be entered, and defendants and all acting in concert with them will be enjoined from seizing allegedly obscene motion pictures without affording a prior adversary hearing to the possessors and exhibitors of same. The Court finds no valid reason why it should not refrain from granting equitable relief from the criminal prosecution now pending; if plaintiffs did in fact possess and exhibit obscene motion picture films in violation of law a prosecution of same is entirely appropriate. The instant case differs from the case of *Dombrowski*, supra, in this regard in that the Court does not find bad faith on the part of the defendants which might constitute a ground for said equitable relief from State court criminal proceedings. On the contra, while disagreeing with the defendants' contentions, the Court has no reason to believe that they acted in anything but good faith, and plaintiffs' prayer for an injunction enjoining the defendants from the pending criminal prosecution will be denied.

The defendant, Wilkinson, having announced his intention to apply to the Fourth Circuit Court of Appeals for immediate relief from this Court's order, said order will contain a provision that same be stayed for a period of ten days in order to afford the defendants the opportunity requested.

An order in conformance with this memorandum will be entered.