John C. Marbach, J.
Defendants, Steinberg and 208 Cinema, Inc. move for the following orders: (1) granting said defendants permission to inspect the Grand Jury minutes; (2) directing the People to furnish said defendants with a list of the witnesses they intend to call upon the trial of the within indictment; (3) directing the People to furnish said defendants with a bill of particulars; (4) suppressing all evidence seized from said defendants by the People in the instant case or, in the alternative, granting them a hearing on the validity thereof,-(5) directing the People to furnish said defendants with all prints seized thereby, so that experts intended by said defendants to testify thereat may view same sufficiently in advance of trial; (6) dismissing the indictment herein on the grounds that (a) section 235.05 of the Penal Law of the State of New "York is unconstitutional, in violation of the First and Fourteenth Amendments to the Constitution of the United States, and/or (b) the exhibition of the films set forth in the indictment is protected by the First and Fourteenth Amendments to the Constitution of the United States; (7) dismissing the indictment herein on the grounds of adverse pretrial publicity or, in the alternative, granting a change of venue to New York County.
The facts are as follows:
On April 18 and 21, 1969, an Assistant District Attorney of Westchester County, William H. McKenna, attended a per *1043 formance at the Capitol Theatre and viewed two films then being exhibited. They were entitled “ The Girl from Pussycat ” and “ Professor Lust.” He also viewed a “trailer” ,or preview of coming attractions entitled “Babette,” “ The King,” “ All Women are Bad,” “ I, a Woman,” and “ Carmen Baby.”
Mr. McKenna then made an affidavit in which he described “ The Girl from Pussycat ” in considerable detail, and “ Professor Lust ” and the trailer in somewhat less detail. He submitted this affidavit to County Judge, George D. Burchell, of Westchester County. The Judge himself attended a performance at the Capitol Theatre on April 22,1969 and viewed ‘1 The Girl from Pussycat,” “ Professor Lust,” and the trailer. The Judge thereupon issued a search warrant dated April 22, 1969 in which he stated that he had viewed the film and that he was satisfied that they violated both the State and Federal obscenity and pornography laws. The warrant commanded the police to seize “ any and all reels of motion picture film, including but not limited to ” “ The Girl from Pussycat ”, “ Professor Lust”, the trailer, advertising material, and projection equipment. Pursuant to this warrant, the police immediately seized “ The Girl from Pussycat ”, “ Professor Lust ”, certain advertising material, and projection equipment. The trailer was not available when the police visited the theatre. They also seized two other films which had not yet been exhibited at the theatre entitled ‘ ‘ The King, ’ ’■ and ‘ ‘ All Women are Bad. ’ ’
Steinberg was arrested and arraigned in the Village Justice Court of Special Sessions of Port Chester on an information charging obscenity in violation of section 235.05 of the Penal Law. Subsequently, the case was presented to the Westchester County Grand Jury which, on April 25, returned an indictment against Steinberg on this charge.
On April 25,1969 McKenna made another affidavit for another search warrant in order to seize the trailer. On April 23 Judge Burchell issued a search warrant for its seizure. This warrant was immediately executed and the trailer for “ I, a Woman ” and “ Carmen Baby ” was seized.
Subsequently, there was another search and seizure. On May 10, 1969 McKenna made another affidavit in which he recounted what he had observed when he attended the Capitol Theatre on May 8. On that occasion he viewed two films entitled 4 ‘ A Thousand Pleasures ’ ’ and ‘ ‘ Love is Where Its At, ’ ’ and a trailer of two coming attractions entitled “ Sock It to Me Baby,” and “ Campus Heat.” The affidavit describes these films and the trailer in detail. McKenna submitted this affidavit to a Village Justice in Port Chester who himself viewed the *1044 films and trailer, found them obscene, and then signed a warrant authorizing the seizure of ‘ ‘ any and all reels of motion picture film including but not limited to ” “ A Thousand Pleasures ’ ’ and ‘ ‘ Love is Where Its At, ’ ’ and the trailer of ‘ ‘ Sock It to Me Baby ” and “ Campus Heat.” Pursuant to this warrant, these two films and the trailer were seized. No other films were seized.
Steinberg was rearrested on May 10. at which time he moved to suppress all the films seized on April 22, 25 and May 10,1969. On May 14 the Westchester County Grand Jury returned an 18-count indictment which subsequently was superseded by a 27-count indictment charging the above two defendants and their codefendant, American Film Distributing Corp., with the crime of obscenity.
The general test for obscenity has been defined, for First Amendment purposes, as being whether, to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest. (Roth v. United States, 354 U. S. 476, 489.) Three elements must coalesce: It must be established that (1) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (2) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (3) the material is utterly without redeeming social value. (Memoirs v. Massachusetts, 383 U. S. 413, 418.)
New York State has adopted the above Federal standard as its definition of obscenity. (Penal Law, § 235.00.)
The court will treat the main issues first before deciding the other portions of the omnibus motion.
It is defendants ’ contention that the films were seized without a prior adversary judicial proceeding in court in violation of defendants’ rights under the First and Fourteenth Amendments. Defendants rely on several decisions in other circuits throughout the Nation: Metzger v. Pearcy (393 F. 2d 202 [7th Cir. 1968]; Cambist Films v. Illinois (292 F. Supp. 185 [N. D. Ill., 1968]); Cambist Films v. Tribell (293 F. Supp. 407 [E. D., Ky., 1968]), and on the holdings and language of the United States Supreme Court in Marcus v. Search Warrant (367 U. S. 717); A Quantity of Books v. Kansas (378 U. S. 205); Lee Art Theatre v. Virginia (392 U. S. 636). Defendants further seek a determination that section 235.05 of the Penal Law of the State of New York is unconstitutional. Finally, defendants ask this court to uphold their contention that every film has ‘ ‘ redeeming social importance ’ ’. In opposition the People rely on the recent decisions of the United States District Court for the Southern *1045 District of New York in 208 Cinema, Inc. v. Vergari (decided Aug. 8, 1969, McLean, J.) and Rage Books v. Leary (301 F. Supp. 546).
The court denies the motion in its entirety, with the limited exception noted herein. Since the Court of Appeals for the Second Circuit has granted a stay on September 15,1969, pending appeal of that portion of Judge McLean’s opinion which suppressed the seizure of the films entitled ‘ ‘ The King ’ ’ and “ All Women Are Bad ”, this court will reserve decision on the suppression of these two films pending the results of the appeal.
It is clear that motion pictures are within the scope of the constitutional guarantees of freedom of speech contained in the First and Fourteenth Amendments to our Constitution. (Jacobellis v. Ohio, 378 U. S. 184, 187; Joseph Burstyn, Inc. v. Wilson, 343 U. S. 495, 502.) It is equally clear that obscenity and obscene publications are not within the area of constitutionally protected speech (Roth v. United States, 354 U. S. 476). The State is entitled to prosecute people who exhibit motion pictures which are obscene. In order to prosecute for obscenity they must first seize the films, since the best evidence of whether the picture is obscene or not is the picture itself.
Before the films were seized, Judge Bubchell and Judge Wein, at the request of the District Attorney, viewed all the films and trailers at regularly scheduled performances in the Capitol Theatre and then signed the search warrants. The search warrants were based upon the Judges’ findings that there was probable cause for believing that section 235.05 of the Penal Law of this State and the Federal obscenity and pornography law was being violated by the showing of these films. Defendants argue that before the films were seized there must have been a prior adversary judicial proceeding on each and every film, citing the above-mentioned precedent. Both Marcus (367 U. S. 717, supra) and A Quantity of Books (378 U. S., 205, supra) involved massive seizures pursuant to civil statutes in Missouri and Kansas respectively. Lee Art Theatre (392 U. S. 636, supra) involved a Virginia criminal prosecution. This court agrees with Judge McLean that, despite some broad language in these opinions, particularly in A Quantity of Books (supra), the actual holdings of these decisions do not require . that the motion be granted.
This is not a massive seizure of books, but a seizure of motion pictures. In the court’s opinion it is less practicable to hold a preliminary judicial adversary proceeding in a case involving motion pictures than in a case involving books. To require a full adversary judicial proceeding prior to the seizure would *1046 be unreasonable, and in many cases impractical since by the time a hearing could be arranged after due notice to the potential defendant the film might no longer be in the possession of the potential defendant.
This case is further distinguishable from the three Supreme Court cases in that the procedure followed in this seizure was designed to safeguard the protections afforded to nonobscene pictures, unlike the fact situations in the three United States Supreme Court cases. In this case we have the detailed factual affidavit of the District Attorney coupled with the actual personal observations by the Judges of all the films and trailers seized. This is far more than the 45-minute judicial scrutiny of 7 of the 59 titles of the books seized in A Quantity of Books (378 U. S. 205, supra) or the personal observation of the billboards in advertising the films by a police officer in Lee Art Theatre (392 U. S. 636, supra) or the initial seizure of 11,000 copies of 280 different publications without any judicial scrutiny in Marcus.
In the opinion of this court these three cases were primarily concerned with procedures which ‘ ‘ lacked the safeguards which due process demands to assure nonobscene material the constitutional protection to which it is entitled ” (Marcus, 367 U. S., at p. 731). In the case at bar, all that reasonably could have been done to protect the constitutional right to freedom of expression was done. As Judge Pollack stated in Rage Books (301 F. Supp., at p. 549): “ It cannot be the law, free speech rights notwithstanding, that peddlers and purveyors of smut and despicable vulgarity have a constitutional license to publicly exploit pictures, magazines and books plainly exhibiting gross depravity, with complete immunity from on-the-spot arrest of the merchant and seizure of a reasonable quantity of the evidence on which to prosecute the arrest.” This court is sensitive to protecting freedom of speech but it has never been held that liberty of speech is absolute. (Times Film Corp. v. Chicago, 365 U. S. 43, 47.) The first Amendment which guarantees this freedom was never designed or intended to protect the purveyors of filth against the more important interest of our society as a whole. (See Larkin v. Putnam’s Sons, 14 N Y 2d 399, 408 [per Scileppi, J., in dissent].) Accordingly, the portion of defendants ’ motion which seeks to suppress the seizure of all the motion pictures because there was no prior judicial adversary proceeding is denied, with the limited exception of those two films on which the court has reserved decision.
Defendants argue that any statute which makes criminal the peaceful promulgation by word or film of any idea is constitu *1047 tionally impermissible. Obscene publications have never been and are not now within the protection of the First and Fourteenth Amendments. (Roth v. United States, 354 U. S., 476, supra.) The public has a right to be protected against the promotion of obscene material, whether by film or otherwise. Absent some controlling authority holding this section of the Penal Law unconstitutional, this court declines to do so. Other than alleging that the statute is unconstitutional for the above reason, no other substantial constitutional question has been raised. Furthermore, this court is not determining whether the films seized are obscene. It is simply deciding whether or not the seized films must be suppressed as a matter of law.
In so deciding, this court rejects the arguments that every film has “ redeeming social importance ” as is claimed by defendants. Defendants contend that erotic motion pictures have as much right to the protection of the First Amendment as does “ Chitty Chitty Bang Bang”. Nonobscene films do, but obscene films are not within the protection afforded by the First Amendment. (Roth v. United States, 354 U. S. 476, supra.) Defendants further seek a determination that the Supreme Court standards which are, in fact, continuously troublesome, be set aside in the interest of logic and common sense. This court feels that the application of logic and common sense by the courts of this State and Nation to questions involving films of this type might well result in proscribing this type of film as well as the other filth and depravity which prey on society as a whole in the interests of a small group of smut peddlers intent upon pecuniary profits. This court has obligations to all the people of this county, and to license the exhibition of this type of gross depravity under the guise of free speech in the interest of commercial exploitation would be a dereliction of its duty to the people.
With respect to the other motions contained in the moving papersr
1. The motion to inspect the Grand Jury minutes is denied. (People v. Bergerson, 17 N Y 2d 398; People v. Howell, 3 N Y 2d 672.
2. The motion to direct the People to furnish defendants with a list of witnesses they intend to call is denied in the court’s discretion, as beyond the scope of permissible pretrial discovery. (People v. Spina, 14 A D 2d 505.)
3. The motion to direct the People to furnish a bill of particulars is denied, as seeking matter evidentiary in nature which is not within the scope of permissible pretrial discovery. (People v. Spina, 14 A D 2d 505, supra.)
*1048 4. The motion to furnish defendants with all the prints seized so that the defendants’ experts may examine them for the purpose of testifying at the trial is granted in part and denied in part. The court directs that the District Attorney permit the defendants’ experts to examine the films under the supervision of the District Attorney’s office at a mutually agreeable time. This will permit the defendants to adequately prepare for trial while at the same time insuring that the films will remain in the custody of the District Attorney’s office.
5. Finally, the defendants seek to dismiss the indictments on the grounds of adverse pretrial publicity or in the alternative granting a change of venue to New York County. In support of this motion the defendants attach copies of newspaper articles which appeared in the local papers. Defendants rely on the United States Supreme Court decision in Shepard v. Maxwell (384 U. S. 333). That case involved what has been described as the carnival atmosphere surrounding the celebrated trial of the noted osteopath Samuel Shepard for murder. It is concerned more with what went on during the trial, both in and out :of the courtroom, than with the pretrial publicity. The fact situation in Shepard is clearly distinguishable from our fact situation here.
Freedom of the press to report the news and to editorialize on the news is protected by the same First Amendment to the United States Constitution that defendants seek to justify in showing of these films. The press in Westchester County has been conscious of and has discharged its obligations to both the citizenry and defendants at the bar in a responsible manner exercising their right to freedom of the press while at the same time recognizing defendants’ right to a fair trial.
It is true that certain type of pretrial publicity in the press in certain cases may make it impossible to pick an unbiased jury. However, in a county the size of Westchester, with a cosmopolitan population of close to one million people, it has been found through experience that it is possible in almost every instance to select a jury which is both intelligent and fair. (See, e. g., People v. Minnicone, N. Y. L. J., May 27, 1969, p. 17, col. 8.) In order to secure that the defendants’ rights to a fair trial are protected, the Trial Judge, as has been done numerous times in the past, can determine during the selection of the jury whether the pretrial publicity thwarts the picking of an unbiased jury. Accordingly, this portion of the motion seeking to dismiss the indictment or to transfer the case to New York City is denied. This case will proceed to trial.