William E. Ringel, J.
The defendants, the alleged author, producer and the actors of a theatrical production entitled ‘ ‘ Che ’ ’, were arrested pursuant to arrest warrants and charged with violation of the obscenity statutes, i.e., public lewdness (Penal Law, § 245.00), consensual sodomy (Penal Law, § 130.38), giving an obscene performance (Penal Law, § 235.05, subd. 2), and conspiracy to commit these acts (Penal Law, § 105.00).
Contemporaneous with the arrests, certain real evidence was seized, consisting of six scripts of the play including a 11 lighting ” script, a clear plastic stage prop resembling male genitalia, and a book containing a list of names of persons who made reservations to# see the performance, all of which the defendants seek to suppress.
The facts elicited at this protracted suppression hearing disclose that on March 24, 1969, a Judge of this court, after viewing the play while accompanied by several law enforcement *1079 officers and after a complaint had been executed by a Deputy Police Inspector of the New York City Police Department, issued warrants for the arrest of the defendants, charging them with the above-named offenses. The arrests were made in the theatre following the performance of the play, and at the same time the items of real evidence sought to be suppressed were seized. No search warrants were issued.
The defendants contend that, since there was no prior adversary proceeding in which the question of obscenity of the theatrical production was tested, the seizures were unlawful. They cite several Federal court decisions in support of that position. (Tyrone Inc. v. Wilkinson, 294 F. Supp. 1330, affd. 410 F. 2d 639; Cambist Films v. Tribell, 293 F. Supp. 407; Metzger v. Illinois, Civil No. 67C 2194, D. C. N. D. Ill. [1968].)
Tyrone does not support this contention. On the contrary, Tyrone was an injunction proceeding, based on a Virginia statute which permitted an adversary proceeding in proceedings against alleged obscene movie films. That application was to enjoin the seizure of films and to enjoin the criminal prosecution based on a showing of alleged obscene films. Although the court enjoined the District Attorney from future seizures of alleged obscene motion picture films without affording a prior adversary hearing, it refused to enjoin criminal prosecution of those same defendants for allegedly exhibiting an obscene film. The court observed (294 F. Supp., at p. 1333): “if plaintiffs did in fact possess and exhibit obscene motion picture films in violation of law a prosecution of same is entirely appropriate.”
No law similar to the Virginia statute exists in New York.
In a recent decision, Judge Pollack, U. S. District Court, Southern District of New York, sustained the New York County District Attorney in a prosecution of the operator of a retail book store for selling books and other articles in violation of the obscenity statutes. There, too, it had been contended that the prosecution and the seizure of the allegedly obscene books were illegal since no prior adversary proceeding on the issue of obscenity had been conducted. However, Judge Pollack ruled no such hearing was required, as it would hobble the State authorities in their legitimate attempt to protect the public interests of society (Rage Books v. Leary, 301 F. Supp. 546).
The other cases cited by defendants are similarly not in point.
Under our law, violators of the obscenity statutes are subject to criminal prosecution (Penal Law, art. 235) and also may be proceeded against by injunction proceedings (Code *1080 Crim. Pro., § 22-a). The prosecution may proceed under either or both. In Kingsley Books v. Brown (354 U. S. 436, 441) the United States Supreme Court said: “It is not for this Court thus to limit the State in resorting to various weapons in the armory of the law. * * * If New York chooses to subject persons who disseminate obscene ‘ literature ’ to criminal prosecution and also deal with such books as deodands of old, or both, with due regard, of course, to appropriate opportunities for the trial of the underlying issue, is not for us to gainsay its selection of remedies ”.
Assuming, arguendo, that an arrest for the dissemination of alleged obscene material, to be lawful, must be preceded by an adversary proceeding in order to avoid the “ prior restraint ” of communications violative of the First Amendment (Marcus v. Search Warrant, 367 U. S. 717), such an adversary proceeding would not'be applicable to an arrest of individuals who allegedly participated in an obscene, live theatrical performance. Section 22-a of the Code of Criminal Procedure relates to the jurisdiction of the Supreme Court to enjoin the sale or distribution of obscene prints and articles, etc. It is clear that this section has no reference whatever to an alleged obscene, live theatrical performance, nor will the court enjoin a criminal prosecution based on an alleged obscene performance. (Tyrone v. Wilkinson, 294 F. Supp. 1330, supra.) (See, also, People v. Steinberg, 60 Misc 2d 1041.)
Subdivision 2 of section 235.05 of the Penal Law provides that giving an obscene performance constitutes a crime. Obscenity enjoys no constitutional immunity (Roth v. United States, 354 U. S. 476). A Judge of this court having viewed the performance in a public theatre, together with a police official who executed a sworn complaint that a violation of the law of obscenity had occurred, constituted probable cause for the issuance of warrants for the arrest of the defendants. (Code Crim. Pro., § 177 and § 148 et seq.)
Mindful of the fact that theatrical performances are media of expression protected by the First Amendment (Joseph Burstyn, Inc. v. Wilson, 343 U. S. 495, 501-502), the theatrical performance in the instant case was subjected to prior judicial scrutiny before the warrants were issued. More than this, the People could not be expected to do. (208 Cinema Inc. v. Vergari, U. S. Dist. Ct., S. D. N. Y., Aug. 8, 1969, McClean, J.) The court sustains the lawfulness of the arrests.
The lawfulness of the search.and .seizure of the articles which defendants seek to suppress cannot be gainsaid. These items, six scripts of the play, a reservation book and plastic genitalia, *1081 were, in the court’s view, seized contemporaneously with and truly incident to the purpose of a lawful arrest. (Preston v. United States, 376 U. S. 364; Stoner v. California, 376 U. S. 483; Schmerber v. California, 384 U. S. 757.) Riffling through the pages of the scripts to determine their contents, does not in and of itself constitute an unlawful search. Nor does the fact that these items are not contraband per se invalidate their seizure. Evidence which is subject to destruction may also be lawfully seized. (Chimel v. California, 395 U. S. 752; cf. Code Crim. Pro., § 792, subd. 4.) It should be noted that the items seized come within the “ arm’s-length ” rule enunciated in Chimel (supra).
Defendants have apparently sought to classify this case as one involving suppression of constitutionally protected free speech. In simplistic terms, the court views this case as a simple arrest for an alleged obscene performance coupled with an incident search and seizure. The fact that scripts of the play were also seized as evidence for use at trial (a matter for the discretion of the trial court), does not convert this case into “ free-speech ” issue.
Defendants’ motion to suppress the items seized herein is in all respects denied.