John Copertiho, J.
On January 30, 1969, an Assistant District Attorney and an officer of the Suffolk County Police Department presented an application for a search warrant to the Honorable Thomas M. Stark, a Justice of the Supreme Court in this county. At the time the ápplication was made, this officer delivered 18 books to Mr. Justice Stark for his examination. Mr. Justice Stark adjourned the matter to allow him to examine each and every one of the books for the purpose of making a preliminary determination of whether or not they were in fact obscene within the definition of subdivision 1 of section 235.00 of the Penal Law. Mr. Justice Stark then took four days to read the books, determined that they were obscene within the meaning of our obscenity statute, and thereupon issued a search warrant commanding the seizure of “ all copies of the (18) eighteen obscene paper back books, articles and writings as noted in the application and affidavit attached. ’ ’ The 18 books were set forth in the application and affidavit for the search *925 warrant executed and presented by the officer. A search and seizure pursuant to said warrant resulted in the appropriation of a total of 117 copies of 12 of the 18 titles in the affidavit. As a result thereof, these actions were commenced against each of the defendants charging obscenity in violation of subdivision 1 of section 235.05 of the Penal Law and subdivision 2 of section 235.10, setting forth possession with intent to promote as to 4 of the titles which were found in 6 or more copies. Either through an oversight or for a reason which has not been divulged in the papers before the court, a fifth title of which 7 copies were seized was not included in the information giving rise to these actions.
All three defendants have now joined in a motion seeking an order controverting the search warrant and suppressing the evidence seized pursuant thereto, and for an order dismissing the complaints. As to that branch of the motion directed to the search warrant, the defendants- maintain that the warrant was invalid because it was issued without a prior adversary hearing, that it did not specify with particularity the items authorized to be seized, that there was lack of probable cause due to the fact that the items directed to be seized were constitutionally protected, and due to an insufficient factual showing in the affidavit for the warrant.
As to that part of the motion wherein a dismissal of the complaint is requested, the defendants maintain that all the titles are constitutionally protected and that section 235.00 of the Penal Law is unconstitutional within the meaning of People v. Richmond County News (9 N Y 2d 578).
The defendants contend that a seizure of publications cannot be ordered without a prior adversary hearing, and rest their contention mainly upon A Quantity of Books v. Kansas (378 U. S. 205); Marcus v. Search Warrant (367 U. S. 717); Cambist Films v. Illinois (292 F. Supp. 185); and Tyrone, Inc. v. Wilkinson (410 F. 2d 639). Both Quantity and Marcus involved the wholesale seizure of books with their ultimate destruction as the purpose of the seizure. Both cases arose -out of the State statutes providing for civil proceedings aimed at the distribution of obscene articles. While the procedure set forth in those statutes were directed toward the same objective as section 22-a of the Code of Criminal Procedure, the statutes permitted seizure without a prior hearing. The procedures under review were compared to our own as set forth in said section 22-a which affords a hearing prior to seizure and destruction. The cases *926 must be read in that light involving as they do due process under the Fourteenth Amendment. The cases do not involve a search warrant aimed at a criminal prosecution as the case at bar does. In Tyrone, the court there relied on Quantity, but nevertheless required “ the theatre to make available a copy of ‘ Angelique ’ for the preparation and trial of the criminal cases.”
So far as Cambist Films v. Illinois (supra) is concerned, this case was called to the attention of the court in People v. Steinberg (60 Misc 2d 1041). The court nevertheless held that an adversary hearing was not required prior to the issuance of a search warrant aimed at a criminal prosecution.
State and Federal courts in New York have refused to deny the prosecution use of obscene articles seized pursuant to a search warrant where no prior adversary hearing has been held (People v. Steinberg, supra; People v. Bercowitz, 60 Misc 2d 1078; People v. Hall, 60 Misc 2d 850; Rage Books v. Leary, 301 F. Supp. 546). These cases hold that all that is required is “prior judicial scrutiny” before a warrant may issue. Concededly, there was such scrutiny here.
Nor can it be said that a seizure will be stricken down merely because it authorizes all copies of a certain title to be seized where no prior adversary hearing has been had. (See Rage Books v. Leary, supra.)
While the titles to be seized do not appear on the face of the search warrant, they are incorporated in the warrant by reference to the affidavit. There is no doubt here that the officers were authorized to seize 18 specific titles and no more. There was no delegation to the executing police officers of any authority to decide for themselves what could or could not be seized. There is sufficient authority for reading the affidavit and warrant together to ascertain which items are specified as subject to search and seizure. (People v. Hendricks, 45 Misc 2d 7, affd. 30 A D 2d 640, revd. on other grounds 25 N Y 2d 129; People v. Sohmers, 55 Misc 2d 925, 926.)
The requirement that a search warrant specify with particularity what may be seized is aimed at preventing the police from indiscriminately seizing any and all items which they consider as fair game. (People v. Rothenberg, 20 N Y 2d 35, 38.) Such is not the situation here where the warrant makes specific reference to the titles which are set forth in the affidavit.
A prior determination has already been made here to the effect that the items seized are obscene within the meaning of our obscenity statute. Therefore the defendants should not be *927 heard to complain prior to trial that the items seized are not obscene and constitutionally protected. The defendants urge that the seized books are “ virtually identical to ” similar works which have been consistently declared to be free from obscene taint. The defendants must admit, however, that in many cases a very thin line exists between what is constitutionally protected and what is violative of decency and therefore proscribed.
In view of" the fact that a Justice of the Supreme Court has heretofore ruled that the seized titles fall within the proscribed area, it would be presumptuous on the part of this court to hold otherwise.
A careful reading of the affidavit in support of the warrant shows that the requirements of the cases of Spinelli v. United States (393 U. S. 410) and our own People v. Hendricks (25 N Y 2d 129, supra) have been met. While no allegations are made as to the reliability of the informants, the reliability of the information that they supplied was corroborated by detailed investigation made by the police officer. Further, the identity of each informant was divulged and they do not appear to be in character with the informants that the police many times rely upon.
The defendants maintain that subdivision 1 of section 235.00 of the Penal Law wherein obscenity is defined, is violative of the free speech provisions in our own State Constitution. They argue that People v. Richmond County News (9 N Y 2d 578, supra) is of constitutional dimensions and goes beyond the Federal standards which have been followed by section 235.00. This court does not read the Richmond County News case in the same way. The Richmond County News case interpreted our former obscenity statute, section 1141 of the Penal Law, and no more. What the Court of Appeals did was to interpret obscenity in accordance with the Penal Law as it then existed and was not defining the limits of expression permissible under our State Constitution. The 1 ‘ hard-core pornography ” test must be limited to the definition of obscenity in the Penal Law of 1909 and nothing more. Several quotes from then Judge and now Chief Judge Fuld’s opinion will bear this out. At page 585 of 9 N Y 2d, Judge Fuld states as follows: “It is apparent, however, that, although the Butler and Roth cases destroy the Hicklin rule, they do not lay down a test of obscenity binding on our interpretation of this State’s obscenity statute.”
Further down on page 585, appears the following sentence which carries over to page 586: “These statements, however, *928 can only indicate the broad boundaries of any permissible definition of obscenity under the United States Constitution; they do not pretend to and cannot, give specific content to the meaning of ‘ obscene ’ as it appears in our statute.”
At page 587 the following language was used: “Under our statute, section 1141 of the Penal Law, the test of the obscene, of the pornographic, is not in the tendency or appeal of the material, but rather in its content objectively appraised.”
And again at page 587, the court said: ‘ ‘ Applying this standard to the issue of the magazine before us, it is plain that it does not fall within the proscribed area. This is so because no one of its stories or pictures is obscene within the meaning of section 1141 of the Penal Law.”
Further, a reading of People v. Fritch (13 N Y 2d 119) will confirm this court’s view. The following quotes from pages 120-121 and 123, respectively, are set forth:
“ This case presents for consideration the recurring question of what constitutes obscene literature under the aforementioned statute in light of the guarantees of freedom of expression contained in both Federal and State Constitutions. We have concluded that 1 Tropic of Cancer ’ is obscene within the meaning of our statute and is not within the area of constitutional-protection.”
“ In addition to the foregoing tests imposed by the decisions of the Supreme Court, this court interpreted section 1141 of the Penal Law in People v. Richmond County News (9 N Y 2d 578, 586) as applicable only to material which may properly be termed ‘ hard core pornography ’ ”.
There is authority to the effect that the Richmond Coimty News “ hard-core pornography ” test has been discarded. (See People v. Stabile, 58 Misc 2d 905.)
For all of the foregoing reasons, the motion for an order controverting the warrant and dismissing the information is denied.