REED, Judge.
This is an interlocutory appeal by the defendants from an order denying a motion to dissolve a temporary restraining order.
On Friday, 20 September 1968, the county solicitor for Palm Beach County, Florida, brought suit in the Circuit Court for Palm Beach County against South Florida Art Theaters, Inc., Betty Henn, its president, and Harry Turbeyfill, its treasurer. The suit was filed pursuant to F.S. 1967, Section 847.011(7), F.S.A., to enjoin the said defendants from showing an allegedly obscene motion picture.
The complaint alleged that the defendants operated the Playboy Theater in Lake Worth, Florida. The motion picture was alleged to have commenced at that theater on Thursday, 19 September 1968 and was scheduled to play through the weekend.
The complaint demanded a permanent injunction as well as a temporary restraining order without notice.
On the day the complaint was filed the circuit judge issued a temporary restraining order without notice to the defendants. The order was issued on the basis of the sworn complaint and sworn testimony. In addition to restraining the defendants from showing the motion picture the order directed the defendants to appear at 8:30 a. m. on 23 September 1968 and show cause *708 why the restraining order should not continue in effect throughout the pendency of the case.
Pursuant to the order, the defendants appeared on 23 September and presented a motion to dismiss the temporary restraining order.
The motion to dismiss was predicated on the following grounds: (1) the motion picture is exempt from Section 847.011 by the operation of subsection (9) thereof; (2) Section 847.011 violates the First Amendment of the United States Constitution; (3) Section 847.011 is void for vagueness and, therefore, violates the Fourteenth Amendment of the United States Constitution; (4) Section 847.011(10) is unconstitutional in that it does not provide a proper definition of “obscenity”; and (5) the complaint sets forth only conclusions of the pleader; therefore, the temporary injunction based thereon was not based on the reasoning of a judicial officer, but rather on the conclusions of the county solicitor who filed the complaint.
Following the hearing on 23 September the trial court entered the following order:
“The Court is of the view that the sworn complaint and testimony under oath of the County Solicitor are sufficient to withstand Defendant’s motion to dismiss. Thereupon, it is
“ORDERED that Defendant’s motion to dismiss the complaint and dissolving the temporary restraining order is denied.”
An interlocutory appeal has been taken from that order.
The defendants basically argue three points. They are:
Point 1. The motion picture film which was the subject of the complaint was exempt from Section 847.011 by operation of subsection (9) thereof.
Point 2. Section 847.011 is void because the standard provided for the determination of obscenity is without a sufficient degree of definiteness and is so broad that it reaches constitutionally protected publications.
Point 3. The procedure employed by the trial court in granting the ex parte temporary restraining order infringed the defendants’ constitutional right of free speech.
The defendants in their brief concede that motion pictures are covered by Section 847.011, but argue that commercial movie theaters are exempt from Section 847.011 by the operation of subsection (9) thereof which provides that, “This section shall not apply to the exhibition of motion picture films permitted by § 521.02.” F.S. 1967, Section 521.02, F.S.A., provides that no motion picture may be shown in a licensed commercial theater unless it has been reviewed and approved by the National Board of Review of Motion Pictures, Inc. or the Film Estimate Board of National Organizations, or has been licensed by the State Department of Education of the State of New York.
It is clear from the plain language of Section 847.011(9) and Section 521.02 that the legislature intended to exempt from the obscenity statute any film approved by one of the organizations specified in Section 521.02. There is no basis in the statute to support the defendants’ contention that all films shown in commercial theaters are exempt from Section 847.-011 and there is no basis in the record to indicate that the particular film here involved was within the standards of Section 521.02 and, therefore, exempt from Section 847.011(9). For this reason we conclude that the first point is without merit.
Subsection (l)(a) of Section 847.011 in its pertinent parts provides:
A person who knowingly * * * shows or * * * offers to * * * show * * * or has in his possession * * * with intent to * * * show * * * any obscene * * * motion picture film * * * is guilty of a misdemeanor * * *.”
*709 The fine provided is $1,000.00 or one year in jail or both.
Subsection (2) is identical to subsection (1) except that it deals with the possession of obscene materials without the intent to show them. A fine of six months or $500.00 or both is provided for the violation of subsection (2).
Subsection (7) of the act provides for the issuance of an injunction by the circuit court to enjoin a threatened violation of the law upon a complaint filed by the state attorney, the county solicitor or a county prosecuting attorney in the name of the state.
Subsection (10) of the statute provides as follows:
“For the purposes of this section, the test of whether or not material is obscene is: Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.”
The defendants point out that recent decisions from the United States Supreme Court have laid down a three point test to measure that which is obscene and subject to state regulation and to differentiate between it and constitutionally protected free speech. Expressions which may be constitutionally prohibited must be such that: (1) the dominant theme of the material when taken as a whole appeals to the prurient interests; (2) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (3) the material is without redeeming social value. These criteria have been developed by the Supreme Court in A Book Named John Cleland’s Memoirs of a Woman of Pleasure v. Attorney General of Massachusetts, 1966, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1; and Redrup v. State of New York, 1967, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515, subsequent to the enactment of F.S.1967, Section 847.-011(10), F.S.A. The defendants take the position that because the statutory definition of obscenity in subsection (10) does not coincide with the criteria established in the cited cases the entire act is unconstitutional.
The defendants simply misconceive the application of the constitutional doctrine to the Florida Statute. It is quite correct to contend that the proof of “ob.scenity” must meet the criteria laid down in the cited cases, but merely because the statute does not define obscenity precisely in terms of the said criteria, the statute is not necessarily unconstitutional. The statute may be applied in a constitutional manner even without the definition provided in the statute.
A complete answer to the defendants’ contentions that the statute is void because subsection (10) does not encompass the three point criteria and because the prohibition against “obscenity” is, therefore, too vague is furnished in State of Florida v. Reese, Fla.S.Ct., 222 So.2d 732, filed 7 May 1969. The very argument raised by defendants here was raised by the appellee in the Reese case, supra, and rejected.
The pertinent language from the Reese case is as follows:
“The appellee contends that these decisions have so modified the Roth test as to amount to an abandonment thereof, and that Subsection (10) of § 847.011 is therefore ‘unconstitutional.’ It appears to us, however, that a determination of the question of whether or not the Roth test has been abrogated by the United States Supreme Court will have no effect whatsoever on the question of the validity of the statute, § 847.011(2), which the appellee was charged with violating. There can he no doubt that prosecutions under an obscenity statute may be initiated and tried under a court-adopted standard of obscenity as well as under a legislatively prescribed one. See Roth v. United States, supra. The addition of Subsection (10) to § 847.011 was *710 merely a legislative declaration of a judicial rule that had already been adopted by the courts of this state. See Rachleff v. Mahon, Fla.App. 1st 1960, 124 So.2d 878; Gerstein v. Pleasure Was My Business,’ Fla.App. 3d 1961, 136 So.2d 8. Subsection (10) is clearly severable from the remainder of the Act under well established rules and the severability clause contained in the Act in which it was adopted. See Sec. 12, Ch. 61-7, Acts of 1961. If Subsection (10) were deleted from the the statute, the situation would revert to what it was prior to its adoption, that is, the courts of this state could adopt the later pronouncements of the United States Supreme Court ‘elaborating’’ upon the definition of obscenity made in Roth, as set forth in Memoirs, quoted above.” (Emphasis added.)
Finally, the defendants argue that the issuance of the temporary injunction without notice and without an adversary hearing denied the defendants their constitutional rights to free speech because: (a) the trial judge did not first view the film, and (b) it was issued without an adversary hearing. In support of the first contention the defendants assert that the temporary injunction was based solely on the sworn allegations of the complaint. The allegations in the sworn complaint, being conclu-sory in nature, provided no evidentiary basis for the action by the trial judge. At the outset it should be noted that the temporary injunction was not based solely on the sworn complaint of the county solicitor. The temporary restraining order expressly states it was based on sworn testimony as well.
The defendants cite for support Lee Art Theatre, Inc. v. Virginia, 1968, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313. In the Lee case the petitioner, an operator of a motion picture theater in Richmond, Virginia, was convicted in the court of Richmond of the crime of possession of obscene motion pictures. The films upon which the conviction was based were admitted in evidence over the objection of the petitioner that they had been unconstitutionally seized. The seizure by the state was accomplished under a search warrant issued by a justice of the peace and based on an affidavit by a police officer which stated that he, the police officer, had determined from personal observation that the films were obscene. The court held that on the sole basis of the affidavit of a police officer, the films were improperly seized and thus improperly admitted in evidence and the judgment of the Supreme Court of Virginia which refused to issue a writ of error was reversed and the cause was remanded for further proceedings apparently in the Supreme Court of Virginia.
The holding of the Court in the Lee Art Theatre case is reflected in the following quote from the opinion:
“The procedure under which the warrant issued solely upon the conclusory assertions of the police officer without any inquiry by the justice of the peace into the factual basis for the officer’s conclusions was not a procedure ‘designed to focus searchingly on the question of obscenity’ * * * and therefore fell short of constitutional requirements demanding necessary sensitivity to freedom of expression. See Freedman v. State of Maryland, 380 U.S. 51, 58-59, 85 S.Ct. 734, 738-739, 13 L.Ed.2d 649.” (Emphasis added.)
Equally important is what the opinion did not hold, as may be seen from the following quote:
“However, we need not decide in this case whether the justice of the peace should have viewed the motion picture before issuing the warrant.”
Thus, the case does not stand for the proposition that the judicial officer must view the film before issuing the warrant seizing the film or, as in our case, the temporary injunction stopping the display of the film. The underlying basis for the ruling was that the justice of the peace acted solely on *711 the basis of the judgment of the police officer and had no factual basis on which to base his own judicial decision. In our case we have an important factual difference in that the trial judge actually heard testimony prior to issuing the temporary injunction.
With regard to defendants’ second contention, that is, that the temporary injunction should not have been issued without an adversary proceeding, the defendants cite and rely on the case of Metzger v. Pearcy, 7 Cir. 1968, 393 F.2d 202. This was an appeal from an injunction issued by a federal district court in Indiana which required a sheriff of Marion County, Indiana, to return a film to its owner. The film had been seized by the sheriff under a warrant issued by a municipal judge in Marion County before whom criminal charges were pending with respect to the film. Relying on A Quantity of Copies of Books v. State of Kansas, 1964, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809, the Court of Appeals for the Seventh Circuit affirmed the district court. The language in the Pearcy case relied on by the defendants is as follows:
“However, we feel that we are bound by the opinion of the Supreme Court in Books. See also Marcus et al. v. Search Warrants of Property, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). The lesson of Books is that law enforcement officers cannot seize allegedly obscene publications without a prior adversary proceeding on the issue of obscenity. Such a seizure violates the First Amendment to the Constitution of the United States, and is a prior restraint condemned by the Supreme Court.”
The Pearcy case is distinguishable on two important grounds. First, it involved a seizure of film. Our case does not. Secondly, there was no adversary hearing provided the plaintiff to test the seizure pending a final determination of the issue of obscenity. In our case, although the temporary injunction was issued on an ex parte basis, an adversary hearing was provided almost immediately and by the very terms of the order which established the temporary injunction.
Metzger v. Pearcy, supra, relies on the case of A Quantity of Copies of Books v. State of Kansas, supra. In that case the procedural development is extremely important to the holding. Under a Kansas statute, the attorney general of Kansas obtained on order from the District Court of Geary County, Indiana, which directed the sheriff of that county to seize copies of certain paperback novels at the defendant’s place of business, the P-K News Service. The proceeding was commenced by the filing of an information by the state attorney pursuant to Kansas law. The information identified by title fifty-nine novels. At a preliminary ex parte hearing, the district judge examined seven out of the fifty-nine listed books. On the basis of his examination of these seven books, the judge issued the order directing the sheriff to seize all copies of the fifty-nine titles listed in the information. The sheriff was able to find only thirty-one of the listed novels and seized all copies (1,715) of the thirty-one novels at the stand of the defendant. After a final hearing the court entered an order for the destruction of the books seized on the ground that they were obscene.
The United States Supreme Court determined that the seizure violated the defendant’s constitutional right to free expression. At one point in its opinion the Court stated:
“It is our view that since the warrant here authorised the sheriff to seise all copies of the specified titles, and since P-K was not afforded a hearing on the question of the obscenity even of the seven novels before the warrant issued, the procedure was likewise constitutionally deficient.” (Emphasis added.)
*712 Later in the opinion the court said:
“We therefore conclude that in not first affording P-K an adversary hearing, the procedure leading to the seizure order was constitutionally deficient.” (Emphasis added.)
Because of the shift in emphasis within the opinion, it is difficult to know precisely what the sine que non of the decision is. We cannot, without a far more definite expression from the high court, infer from the opinion that in no case may a temporary ex parte injunction be issued to deter an apprehended violation of state obscenity laws by the public showing of an obscene film. The underlying principle of the case is expressed in the following language:
“State regulation of obscenity must ‘conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line.’ Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 66, 83 S.Ct. 631, 637, 9 L.Ed.2d 584; the Constitution requires a procedure ‘designed to focus searchingly on the question of obscenity.’ ”
The Supreme Court concluded that because the procedure by which the books were seized was constitutionally defective, the judgment for the destruction of the books must be reversed “to vindicate appellants’ constitutional rights.”
The concurring opinion of Mr. Justice Stewart states that the procedure employed in connection with the original seizure of the books would have been constitutionally valid if the seizure had been limited to the books which the trial judge actually scrutinized. It will be recalled that the trial judge, prior to issuing the warrant, viewed seven books, but directed the seizure of all fifty-nine named in the information. Such a procedure of course has no safeguards to insure that the right of free expression will not be violated with respect to the books not examined by the trial judge. Mr. Justice Stewart in the opening paragraph of his concurring opinion says:
“If this case involved hard-core pornography, I think the procedures which were followed would be constitutionally valid, at least with respect to the material which the judge ‘scrutinized.’ ”
There is one other case from the United States Supreme Court which is pertinent to the problem we face. That is the case of Freedman v. Maryland, 1965, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649. In that case the court held that a censorship scheme for motion pictures created under a Maryland statute was unconstitutional in that it did not provide adequate provision for an exhibitor’s right to a judicial determination of the protected status of his film and did not adequately place the burden of proving obscenity on the state. Significant to our issue, the court at page 739 stated:
“Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolittion.”
Also significant to our decision is the recognition by the Supreme Court in Freedman, supra, that, “films differ from other forms of expression.”
We must look at the procedure employed by the trial court under F.S.1967, Section 847.011(7), F.S.A., to determine whether or not it collided with the principles of the cited cases and particularly with the principle that state procedure for the regulation of obscenity must ensure against the curtailment of constitutionally protected expression and focus searchingly on the question of obscenity.
The procedure which was employed with respect to the issuance of the temporary injunction must not be viewed in isolation, but must be considered as a part of the total procedure authorized by F.S.1967, Sec *713 tion 847.011, F.S.A. The temporary injunction was issued ex parte, but it was based on a sworn complaint and on sworn testimony. It was issued, of course, by a circuit judge. We must assume in the absence of a record showing otherwise that the testimony clearly demonstrated that the apprehended violation would have been committed in the absence of an immediate remedy and that the restraining order was necessary to protect the jurisdiction of the court to make a final determination. The temporary restraining order did not direct that the film be seized and taken out of the possession of the defendants. The restraining order was, therefore, no broader than necessary.
Next, the restraining order provided for a hearing on an adversary basis to determine whether or not the order should continue, pending the final determination of the case. This hearing was set for the next business day following the day on which the order was issued.
Finally, it should be noted that the restraining order was not issued until after the complaint had been filed; therefore, under F.S.1967, Section 847.011 (7) (c), F.S.A., the defendants could have filed an answer and secured a trial of the issues within one day and a final decision within two days after the conclusion of the trial.
We recognize that temporary restraining orders, particularly those granted without notice and an adversary hearing, should be issued rarely and with extreme caution. It is our view, however, that under the narrow fact situation of this case the procedure employed by the state, when taken in context with the procedural rights accruing to the defendants under the Florida obscenity statute, came within the principle of A Quantity of Copies of Books v. Kansas, supra, by ensuring against the curtailment of constitutionally protected expression and focusing searchingly on the question of obscenity. At the same time, the procedure recognized a modicum of power in the state to protect its citizens— particularly the younger ones — from the demeaning influence of obscenity.
The order appealed is affirmed and the cause remanded for further proceedings.
Affirmed and remanded.
WALDEN, C. J., and CROSS, J., concur.