Edward HANBY, Petitioner,

v.

STATE of Alaska, Respondent.

No. 1242.

Supreme Court of Alaska.

Dec. 23, 1970.

Edgar Paul Boyko and Stephen C. Cowper, of Boyko & Walton, Anchorage, for petitioner.

Harold Tobey, Dist. Atty., Robert L. Eastaugh, Asst. Dist. Atty., Anchorage, for respondent.

## OPINION

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR, and ERWIN, JJ.

CONNOR, Justice.

The petitioner, Edward Hanby, was charged with five counts of contributing to the delinquency of a minor, a violation of AS 11.40.130(a), a misdemeanor. He moved to suppress certain evidence and to dismiss the indictment, but the trial court denied both motions. He then petitioned this court for review.

Hanby operates the Billiken Drive-In Theater near Anchorage, Alaska. On October 10, 1969, he was exhibiting motion pictures called "The Pleasure Machines" and "Love Camp 7." On that date Trooper Anderson of the Alaska State Troopers charged Hanby with contributing to the delinquency of a minor.[1] As a result of this charge, a criminal complaint was issued.

Trooper Anderson also executed before a district judge an affidavit for a search warrant. His affidavit states that persons under the age of 18 were present at the theater, and further,

"That this evening at the Billiken Theater * * * are being featured two motion pictures, 'The Pleasure Machines' and 'Love Camp 7', which motion pictures contain scenes which glorify lustful conduct and human brutality.

"That because of the nature of the motion pictures and the age of the viewers, arrests of the persons admitting

1. AS 11.40.130(a) reads as follows: "Contributing to deliquency of a child. (a) A person who commits an act, or omits the performance of a duty, which causes or tends to cause, encourage or contribute to the delinquency of a child under the age of 18 years, is guilty of a misdemeanor."

these children will be made this evening on charge [*sic*] of contributing to the delinquency of a minor."

The affidavit did not set forth in any greater detail the factual basis for the trooper's belief that the search warrant should issue. The trooper did not view the movies to completion; nor did the judge issuing the warrant herself at any time view any part of them. Before the issuance of the warrant there was no adversary hearing on the legality of the seizure.

Based solely on the affidavit, the district judge issued the search warrant. The warrant named both movies, but erroneously stated that they were "stolen or embezzled."[2] No other ground or probable cause for its issuance was stated. It permitted the police to search the premises for the films and to seize both of them. The seizure was accomplished after the final scheduled showing of the motion pictures. No adversary hearing was held on the propriety of the seizure until several weeks later.

On October 30, 1969, the grand jury indicted Hanby on five counts of contributing to the delinquency of a minor. The indictment alleged that five minors under eighteen years of age were on the premises. It charged in each count that films "which depicted brutality and lustful behavior were being presented to public view, such conduct tending to encourage and contribute to the delinquency of the said child."

On November 7, 1969, Hanby moved to suppress the films as evidence. On November 14, 1969, 35 days after the issuance of the warrant, an adversary hearing was held on the defense's motion to suppress. On November 28, 1969, Hanby moved to dismiss the indictment. A hearing was held on both the motion to suppress and the motion to dismiss on January 9, 1970, at which time both motions were denied. Hanby then petitioned this court for a review of his case.

At no time in the interim have the films been returned to petitioner; throughout the entire period they have remained in the custody of the state.

I

This court has held that review will be granted when the sound policy of permitting most trials to run their course uninterrupted by "piecemeal" review of litigation is outweighed by the need for more immediate justice. City of Fairbanks v. Schaible, 352 P.2d 129, 130 (Alaska 1960). We must consider in each such petition "whether the sound policy behind the general rule of requiring appeals to be taken only from final judgments is outweighed by the claim of the individual case that justice demands a present and immediate review of a particular non-appealable order or decision." Stokes v. Van Seventer, 355 P.2d 594, 595 (Alaska 1960). In City of Fairbanks v. Schaible, *supra,* 352 P.2d at 131, we noted that in this task we are given broad discretion under Supreme Court Rules 23[3] and 24.[4] For example, on occa-

---

2. It has never been contended by the state that the films were in fact either stolen or embezzled. The wording of the affidavit was apparently the result of a clerical error.

3. *Rule 23. Review of Non-Appealable Orders or Decisions.*

"An aggrieved party may petition this court for review of any order or decision of the superior court, not otherwise appealable under Rule 6, in any action or proceeding, civil or criminal, as follows:

(a) From interlocutory orders granting, continuing, modifying, refusing or

dissolving injunctions, or refusing to dissolve or modify injunctions.

(b) From interlocutory orders appointing receivers or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property.

(c) From any order affecting a substantial right in an action or proceeding which either (1) in effect terminates the proceeding or action and prevents a final judgment therein; or (2) dis-

sion we have treated cases non-appealable for one reason or another, which had been erroneously appealed, as petitions for review in order to prevent hardship and injustice.[5] Yet we have granted petitions for review only in a few unusual cases.[6] Most petitions for review are denied without opinion. In light of trial court realities, we prefer in most instances to wait until the final judgment before ascertaining the most important issues in the case. We also refrain from prematurely imposing our views upon the parties and trial court, thereby possibly confusing the issues and prejudicing the outcome. Contento v. Alaska State Housing Authority, 398 P.2d 1000 (Alaska 1965). It has, therefore,

been our avowed policy to almost always require cases to proceed to final judgment before review may be had in this court as of right. AS 22.05.010; Supreme Court Rule 6; State v. Hillstrand, 352 P.2d 633 (Alaska 1960); City of Fairbanks v. Schaible, *supra*.

Not only must the case usually pose an important question for us to grant review, that question must demand an immediate answer.[7] The conditions of both Supreme Court Rules 23 and 24 must be met. City of Fairbanks v. Schaible, *supra;* State of Alaska v. Hillstrand, *supra;* Levi v. Sexton, 439 P.2d 423 (Alaska 1968).

 We find this case ripe for immediate review. It presents several important

---

continues the action; or (3) grants a new trial.

(d) Where such an order or decision involves a controlling question of law as to which there is substantial ground for difference of opinion, and where an immediate and present review of such order or decision may materially advance the ultimate termination of the litigation.

(e) Where postponement of review until appeal may be taken from a final judgment will result in injustice because of impairment of a legal right, or because of unnecessary delay, expense, hardship or other related factors.

"Relief heretofore available by writs of review, certiorari, mandamus, prohibition, and other writs necessary or appropriate to the complete exercise of this court's jurisdiction, may be obtained by petition for review, and the procedure for obtaining such relief shall be as prescribed in Part VI of these rules."

4. *Rule 24. Considerations Governing Review.*

"A review shall not be a matter of right, but will be granted only: (1) where the order or decision sought to be reviewed is of such substance and importance as to justify deviation from the normal appellate procedure by way of appeal and to require the immediate attention of this court; (2) where the sound policy behind the general rule of requiring appeals to be taken only from final judgments is outweighed by the claim of the individual case that justice demands a present and immediate review of a particular non-appeal-

able order or decision; or (3) where the superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative tribunal, as to call for this court's power of supervision and review."

5. See, *e. g.*, Leege v. Strand, 384 P.2d 665 (Alaska 1963); Stokes v. Van Seventer, 355 P.2d 594 (Alaska 1960).

6. Baker v. City of Fairbanks, 471 P.2d 386 (Alaska 1970), right to jury trial in any criminal prosecution; Green v. State, 462 P.2d 994 (Alaska 1969), cert. denied, 398 U.S. 910. 90 S.Ct. 1704, 26 L.Ed.2d 70 (1970), constitutionality of method of impaneling jurors; Security Industries v. Fickus, 439 P.2d 172 (Alaska 1968), significantly broadening pretrial discovery; Hebel v. Hebel, 435 P.2d 8 (Alaska 1967), abrogating parental immunity; Crawford v. State, 408 P.2d 1002 (Alaska 1965), constitutionality of method of jury selection; Walters v. Cease, 388 P.2d 263 (Alaska 1964), popular referendum does not postpone the effective date of legislative act; Knudsen v. City of Anchorage, 358 P.2d 375 (Alaska 1960), right to jury trial for violation of city ordinance, overruled on other grounds, Baker v. City of Fairbanks, *supra*; Miller v. Harpster, 392 P.2d 21 (Alaska 1964), defendant's automobile insurance policy and written statements of eyewitnesses to the accident are discoverable.

7. Unless the trial court has significantly departed from accepted procedures. See Supreme Court Rule 24(3).

issues concerning the fundamental right of free expression.[8] Much time has already been lost. The films have been impounded, awaiting a ruling by this court. Although at the time of their seizure, both movies had completed their run in the Anchorage area, it is likely they were scheduled to be shown elsewhere in the near future. As a result of their long impoundment, it is probable that the right of the producers and exhibitors to show the motion pictures elsewhere has been significantly affected. The right of the public to view these films has been similarly denied. Moreover, as petitioner argues,

"In the instant case, distributors and exhibitors of films, books and other forms of expression must anxiously await the outcome of this litigation to determine whether they may be prosecuted under the statute relied on by the state. It is, therefore, vital to have the questions decided as quickly as possible, as the right of free speech and expression hangs in the balance."

■ In such a case as this, when prosecution impinging on First Amendment rights is attempted under a statute which is claimed to be clearly inapplicable, serious constitutional difficulties appear. At some relatively early point the defendant should be given a speedy determination.[9] If he must wait weeks, months or even a year for an adjudication or review on whether the statute is inapplicable, a further problem can arise. If he is threatened again with similar unconstitutional action, it may have an inhibitory effect on the exercise of the right to free expression. Others similarly situated may also be restrained from exercising their rights.

■ Due process requires a prompt adjudication of First Amendment rights. Prolonged threat of prosecution under a statute, asserted to be clearly inapplicable, raises serious problems under the due process clause. The mere threat of prosecution can indeed become a stifling prior restraint on free expression.[10] Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). In such a case both the prosecution and the court have a duty to insure that the defendant's rights are not violated. Though we need not decide whether Hanby's rights to a speedy determination of the legality of prosecution under AS 11.40.-130(a) were violated here, we must act now and not after final judgment.

■ Extraordinary legal remedies to protect First Amendment rights are frequently employed and are constitutionally mandated. Courts must be ever vigilant to protect the rights of those expounding unpopular views or distributing material

8. The First Amendment to the United States Constitution states in pertinent part: "Congress shall make no law * * * abridging the freedom of speech, or of the press * * *."
The Fourteenth Amendment to the United States Constitution states in pertinent part: "* * * nor shall any State deprive any person of life, liberty, or property without due process of law * * *."
The guarantees of free speech and free press of the First Amendment have been made applicable to the states through the Due Process Clause of the Fourteenth Amendment. DeJonge v. Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1937); Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). The Alaska Constitution, art. 1, § 5, provides: "Every person may freely speak, write, and publish on all subjects,

being responsible for the abuse of that right."

9. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), extended the right to a speedy trial under the Sixth Amendment through the due process clause of the Fourteenth Amendment to the states. See also Glasgow v. State, 469 P.2d 682 (Alaska 1970).

10. It is not beyond the realm of possibility to imagine such tactics being used to prohibit the instruction of children by teachers in the schools or by parents in the home. Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969).

thought to be offensive by certain segments of the community. It is these views and these materials that the First Amendment is most often called upon to protect. In such cases popular disapproval backed by even the threat of official sanction may stifle free expression contemporaneously with the utterance itself. The First Amendment will not permit the majority to silence the minority for reasons or by methods which are constitutionally infirm. In the case at bar, the chilling effect of such a prosecution is not hard to imagine.[11] Here, if anywhere, justice delayed is truly justice denied.[12]

Because of the threats posed to freedom of expression, the importance of the issues presented, the conclusive disposition this review will have upon this case, the certainty of the law on the questions presented, and the lack of issues of fact relevant to the questions of law presented for review, we grant the petition for review under Supreme Court Rules 23(e) and 24(1).

II

We now take up the question of whether the search of the Billiken Drive-In Theater and the seizure of the films were unconstitutional.

The warrant was issued solely on the basis of an affidavit. The affidavit itself was based on the observations of a State Trooper who admitted that he only viewed portions of the two motion pictures. As a result of his observations, he concluded that

the films constituted essential evidence of the commission of a crime.

■ The state argues that the warrant should not be tested by the standards applying in obscenity cases, because here a different offense, contributing to the delinquency of a minor, is charged. What is overlooked is that the material seized is a form of expression which is entitled to protection by the First Amendment. In the circumstances of this case, it is only obscene matter which would be reachable by any law, whether that law strikes at obscenity directly or attempts to reach it indirectly through some other exertion of the police power. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964).

■ If we were to accept the state's argument, we would be adopting a doctrine under which forms of expression protected by the First Amendment could be throttled under statutory provisions which circumvent the constitution. Thus we must treat this proceeding as one in which it is claimed that the motion pictures are obscene.[13] In the following discussion it will be seen that freedom of expression is the constitutional norm and that the category of obscenity, which is unprotected, is very narrowly defined.

The English case of Reg. v. Hicklin, L.R. 2 Q.B. 360 (1868), quoted in State v. Jackson, 224 Or. 337, 356 P.2d 495 (1960),[14] set forth the rule, followed for

---

11. We respectfully disagree with Mr. Justice Harlan's argument that while timeliness of repression may significantly affect timely political news, such urgency may not so vitally affect an obscenity prosecution. A Quantity of Copies of Books v. State of Kansas, 378 U.S. 205, 224–225, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964) (Harlan, J., dissenting).

12. While we do not find it a significant factor in our decision to grant the petition for review in the instant case, we note that the state has joined with Hanby in his petition for an early adjudication of these issues.

13. We need not decide whether one could be, in the words of petitioner's counsel at the oral argument, "lustful towards a chocolate eclair."

14. State v. Jackson cites Reg. v. Hicklin as L.R. *2* Q.B. 360 (1868). Other sources cite it as L.R. *3* Q.B. 360 (1868). See, e. g., Roth v. United States, 354 U.S. 476, 489, 77 S.Ct. 1304, 1 L.Ed.2d 498 (1957); United States v. One Book Entitled Ulysses by James Joyce, 72 F.2d 705, 708 (2nd Cir. 1934). Since we do not have the original report of Hicklin available, we cannot ascertain which citation is correct.

many years in this country, that literature would be held obscene if 1) portions of it —specific passages or pages—were obscene and 2) it tended "to deprave and corrupt those whose minds are open to such immoral influences, and into whose hands a publication of this sort may fall." The rule later came under vigorous attack by scholars and jurists. One prominent critique was that of Judge Learned Hand, while he still sat as a federal district judge. He called the test outmoded and said,

> "Indeed, it seems hardly likely that we are even to-day so lukewarm in our interests in letters or serious discussion as to be content to reduce our treatment of sex to the standard of a child's library in the supposed interest of a salacious few,
>
> \* \* \*
>
> " \* \* \* To put thought in leash to the average conscience of the time is perhaps tolerable, but to fetter it by the necessities of the lowest and least capable seems a fatal policy." United States v. Kennerly, 209 F. 119, 121 (S.D.N.Y. 1913).

Some years later he disavowed the test in an appellate setting when he concurred in the opinion in United States v. One Book Entitled Ulysses by James Joyce, 72 F.2d 705 (2nd Cir. 1934). The test stated there was whether

> "The erotic passages are submerged in the book as a whole and have little resultant effect.
>
> \* \* \* \* \* \*
>
> " \* \* \* [whether] the presentation, when viewed objectively, is sincere, and the erotic matter is not introduced to

promote lust and does not furnish the dominant note of the publication.

> "The question in each case is whether a publication taken as a whole has a libidinous effect. [We] believe that the proper test of whether a given book is obscene is its dominant effect." 72 F.2d at 707, 708.[15]

The second portion of the *Hicklin* test was removed when the United States Supreme Court made short shrift of the argument "that, by thus quarantining the general public against books not too rugged for grown men and women in order to shield juvenile innocence, [the state] is exercising its power to promote the general welfare." Justice Frankfurter's answer was succinct: "This argument is to burn down the house to roast the pig." It is anticlimactic to add that the offending statute was struck down as overbroad.[16] Butler v. Michigan, 352 U.S. 380, 77 S.Ct. 524, 1 L. Ed.2d 412 (1957).[17]

Roth v. United States, 354 U.S. 476, 489, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), shortly thereafter knocked out the remaining prop from under *Hicklin* when it specifically adopted the whole book test: whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interests.[18] See also Manual Enterprises, Inc. v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962).

■ Motion pictures are protected under freedom of expression guaranteed by the First Amendment. Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L. Ed. 1098 (1952). The Supreme Court has several times applied the *Roth* test to films in adjudicating the issue of obscenity. See

---

15. See also the district court opinion in that case at 5 F.Supp. 182 (S.D.N.Y. 1933) for a most illuminating revelation of the judicial process at the trial level in an early obscenity case.

16. "The incidence of this enactment is to reduce the adult population of Michigan to reading only what is fit for children." 352 U.S. at 383–384, 77 S.Ct. at 526.

17. See also State ex rel. Beil v. Mahoning Valley Distrib. Agency, Inc., 84 Ohio Law Abst. 427, 169 N.E.2d 48, 59, 66 (Ohio Com.Pl.1960), aff'd 116 Ohio App. 57, 21 Ohio Ops.2d 299, 186 N.E.2d 631 (Ct. of App.1962).

18. For an excellent discussion of the history of obscenity cases in America up to 1960, see State v. Jackson, 224 Or. 337, 356 P.2d 495 (1960).

Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964);[19] Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). See also Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802 (M.D.Ala.1969).

■ Since the trooper in this case did not view both films in their entirety prior to executing the affidavit, it would have been impossible to apply the "whole film" test to determine their obscenity. Even if he viewed most of the films, he could not have made a valid judgment of their effect as a whole. It is significant that the state does not claim he viewed "virtually all" or "substantially all" of the films.[20] It is certainly impossible to correctly assess the dominant effect of any work without examining it to completion. Since the officer did not do so here, he was unqualified to judge whether the film was obscene. United States v. Peisner, 311 F.2d 94, 5 A. L.R.3d 1196 (4th Cir. 1962); Cambist Films v. Duggan, 298 F.Supp. 1148 (W.D. Pa.1969), rev'd in part on other grounds, 420 F.2d 687 (3rd Cir. 1969); United States v. Brown, 274 F.Supp. 561 (S.D.N. Y.1967).

■ The affidavit was also insufficient because it stated only the trooper's conclusions as a basis for the issuance of a warrant. These conclusions were that the "motion pictures contain scenes which glorify lustful conduct and human brutality."[21] No facts in support of these conclusions were set forth in the affidavit.

Under the opinion of the United States Supreme Court in Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), such an affidavit stating merely conclusory opinions of a police officer may not serve as the sole basis for the issuance of a search warrant authorizing the seizure of allegedly obscene films.[22] In that case the officer had executed an affidavit setting forth only the titles of the films and that he "had determined from personal observation of them and of the billboard in front of the theater that the films were obscene." 392 U.S. at 636, 88 S.Ct. at 2104.

The court struck down the warrant because it was "issued solely upon the conclusory assertions of the police officer without any inquiry by the justice of the peace into the factual basis for the officer's conclusion." This procedure under which the magistrate neither saw the movies himself nor made additional factual investigations of their obscenity was not sufficient to satisfy the "constitutional requirements demanding necessary sensitivity to freedom of expression." 392 U.S. at 637, 88 S.Ct. at 2104. Nor was this procedure "designed to focus searchingly on the question of obscenity." Marcus v. Search

---

19. We note that there was no majority opinion in Jacobellis. Indeed, in many obscenity decisions by the Supreme Court there is none. However, as Chief Judge Aldrich, writing for a three-judge district court panel, said in Karalexis v. Byrne, 306 F.Supp. 1363, 1365, n. 4 (D.Mass.1969):

"The Superior Court's extensive analysis * * * of a decade of the Supreme Court's views, reaching the conclusion that there is no majority agreement on any one approach to obscenity, apart from the fact that it disregards such an agreement in Stanley [v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542] overlooks the fact that if only four, or even three, justices agree on one method by which immunity is reached, this agreement is as significant as if five joined, so long as there are enough other justices who can be counted on to concur in the result. If we may be pardoned the analogy, if deuces are wild, an inside straight flush and a deuce takes the pot. See Redrup v. New York, 386 U.S. 767, 770–771, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967)."

20. Affidavit in support of state's motion to correct respondent's memorandum.

21. Affidavit of Trooper Anderson.

22. See also United States v. Melvin, 419 F.2d 136 (4th Cir. 1969); Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802 (M.D.Ala.1969); Cambist Films, Inc. v. Tribell, 293 F.Supp. 407 (E.D.Ky. 1968). But cf. Commonwealth v. State Amusement Corp., Mass., 248 N.E.2d 497 (1969); People v. Steinberg, 60 Misc.2d 1041, 304 N.Y.S.2d 858 (City Court 1969).

Warrants, 367 U.S. 717, 732, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), quoted in 392 U.S. at 637, 88 S.Ct. at 2104.

We find the factual situation in this case, if anything, more egregious than the one in *Lee Art, supra*. In the case at bar the trooper did not even see the movies entirely. His affidavit included similar conclusory statements. Neither was he given expert assistance in determining obscenity. There was no factual inquiry by the judge prior to issuing the warrant. Nor did she view the films at any time.

There has been no showing by the state that the trooper was an expert in the field of obscenity. His conception of "lust" and "human brutality" is not related to any legal standard. Lacking the necessary factual information, neither he nor the issuing judge could have used any such standard for their guidance. Nor does this state have an obscenity statute to provide such a standard.[23] To permit such unbridled discretion in the police would be truly to permit a vague and standardless delegation of power. Interstate Circuit, Inc. v. City of Dallas, 390 U.S. 676, 685, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968); Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 532, 72 S.Ct. 777, 96 L.Ed. 1098 (1952) (Frankfurter, J., concurring).

Judicial appraisal cannot be truly independent if the judge must rely for all of his facts upon the affidavit of a police officer. This is the reason for the constitutional requirement that the judge independently view all allegedly obscene material before permitting its seizure. The First Amendment so requires. Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313; A Quantity of Copies of Books v. State of Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809; Cambist Films, Inc. v. Duggan, 420 F.2d 687 (3rd Cir. 1969); Cambist Films, Inc. v. Tribell, 293 F.Supp. 407 (E.D.Ky. 1968); United States v. Brown, 274 F. Supp. 561 (S.D.N.Y.1967); People v. Steinberg, 60 Misc.2d 1041, 304 N.Y.S.2d 858 (City Court 1969).[24] The record is uncontroverted in this case that the judge viewed no portion of either film herself, but relied solely upon the conclusory assertions of the officer-affiant. Such a procedure must fail under the protections of First Amendment.

Under the supremacy clause of the United States Constitution,[25] this court and every other court in the United States are bound by each and every applicable provision of the United States Constitution.

---

23. We do, however, note that AS 11.45.-030 provides inter alia:
 "A person who (1) uses obscene or profane language in a public place or private house or place to the disturbance or annoyance of another * * * upon conviction, is guilty of a misdemeanor, and is punishable by a fine of not more than $300, or by imprisonment in a jail for not more than six months, or by both."
 See also AS 11.40.170(4) and (5).

24. Several courts have indicated such conclusory affidavits may be invalid for yet another reason. The police operate under a variety of community pressures. These may be especially great in cases where it is claimed that an affront to public morality has occurred. In such cases the officer-affiant may well become an interested party in the prosecution with a personal stake in the outcome. Times

Film Corp. v. Chicago, 365 U.S. 43, 67–68, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961) (C. J. Warren dissenting). Relying solely upon an affidavit executed by a potentially interested party is a dangerous practice. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933).

25. Article VI of the United States Constitution says in part:
 "This Constitution, and the laws of the United States which shall be made in Pursuance thereof; and all treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304, 4 L.Ed. 97 (1816). The United States Supreme Court is the final arbiter of that document. United States Constitution Article III; Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). We conclude that the decision of the United States Supreme Court in Lee Art Theatre v. Virginia, *supra*, controls this case.

The warrant was fatally defective because it was based solely upon the conclusory assertions of a police officer in the supporting affidavit.[26]

It is appropriate to repeat that although this film, unlike that in *Lee Art*, was not interrupted in its run in Anchorage, the seizure is not without an effect upon the rights of others. It is no answer to say that but one print of many was confiscated. The effect of one seizure and threatened prosecution can proceed ripple-like outward from its source. The First Amendment gives national protection. Its scope extends beyond Anchorage, Alaska. In every jurisdiction with an obscenity or a contributing to the delinquency of a minor statute, exhibitors might well feel the threat of the pinch. Interstate Circuit, Inc. v. City of Dallas, *supra*.

Moreover, in this case a threat of future prosecution was presented to Hanby, as the films were not seized for their own sake; they were seized in order to prosecute him. Times Film Corp. v. Chicago, 365 U.S. at 82, 81 S.Ct. 391 (Douglas, J., dissenting).

The state argues that no warrant was necessary, the seizure being incident to a lawful arrest. However, even assuming arguendo that the arrest was lawful, it is well established that constitutionally protected literature and films cannot be seized incidentally without a warrant sufficient in every respect under the First Amendment guarantees discussed above. United States v. Brown, *supra*.

Petitioner also argues that the warrant is invalid for failure to comply with Criminal Rule 37(a). This rule, which is set out in full in the margin, prescribes the requirement for a search warrant in Alaska.[27] One requirement is that the warrant must state the grounds or probable cause for its issuance. Hanby contends the warrant was insufficient because on its face it does not set forth any such grounds or probable cause. The state does not dispute this. However, it says that the "warrant," as contemplated by the rule, includes the supporting affidavit. The state maintains that the affidavit does indeed set forth a sufficient basis for finding probable cause.[28]

26. *See* Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), which struck down a similar affidavit based on conclusory assertions in a case concerning the seizure of a quantity of books and magazines. *See also* Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159.

27. "(a) Search Warrant: Issuance and Contents. A search warrant authorized by law shall issue only on affidavit sworn to before the judge or magistrate or any person authorized to take oaths under the law of the state, and establishing the grounds for issuing the warrant. If the judge or magistrate is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. The warrant shall be directed to a peace officer of the state authorized to enforce or assist in enforcing any law thereof. It shall state the grounds or probable cause for its issuance and the names of the persons whose affidavits have been taken in support thereof. It shall command the officer to search forthwith the person or place named for the property specified. The warrant shall direct that it be served between 7:00 a. m. and 10:00 p. m., but if an affiant is positive that the property is on the person or in the place to be searched, the warrant may direct that it be served at any time. It shall designate the superior court judge or the magistrate to whom it shall be returned."

28. The state contends in the alternative that the warrant was unnecessary for the seizure was permissible to prevent destruction or removal of the evidence. *See* Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Ker v. California, 374 U.S. 23, 83 S.Ct.

The petitioner denies that it does. We need not decide what is meant by "grounds or probable cause" in Rule 37(a), nor whether a search warrant incorporates its supporting affidavit's basis for such a finding. We have already determined the warrant to be invalid on other grounds.

One other major infirmity appears in the seizure of the films. No adversary hearing was held at any point either before the seizure or immediately afterwards to determine their obscenity. Once it is recognized that time is of the essence in such cases, the law must do all that it can to minimize injustice and the possibility of a deprivation of constitutional rights. Although most courts follow the indication in A Quantity of Copies of Books v. State of Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.

Ed.2d 809 (1964), that a prior adversary hearing is necessary,[29] a minority permit an adversary hearing immediately after the seizure if there is a good reason for not holding one before.[30] It has even been suggested that there need be no adversary hearing; merely a showing of the films in the presence of defendant, his counsel, and the judge would suffice.[31] We need not decide whether an adversary hearing prior to the seizure is necessary, since it is indisputable that no timely hearing or showing in the presence of defendant and his counsel was had in this case before or after the seizure.

We, therefore, rule the seizure of the films unconstitutional and order their return to Edward Hanby immediately.[32]

1623, 10 L.Ed.2d 726 (1963). However, the state fails to demonstrate that destruction or removal of the evidence in this case was so likely that a warrantless search was permissible. The danger of loss or destruction would have to be particularly acute to justify a warrantless seizure of materials protected under the First Amendment.

29. See, e. g., Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2nd Cir. 1969), cert. denied 397 U.S. 920, 90 S.Ct. 929, 25 L.Ed.2d 101 (1970); Tyrone Inc. v. Wilkinson, 410 F.2d 639 (4th Cir.) cert. denied, 396 U.S. 985, 90 S.Ct. 477, 478, 24 L.Ed.2d 449 (1969); Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968); Natali v. Municipal Court, 309 F.Supp. 192 (N.D.Cal.1969); Morrison v. Wilson, 307 F.Supp. 196 (N.D.Fla.1969).

30. See, e. g., United States v. Pryba, 312 F.Supp. 466 (D.D.C. 1970); Entertainment Ventures, Inc. v. Brewer, 306 F. Supp. 802 (M.D.Ala.1969); South Florida Art Theaters, Inc. v. State ex rel. Mounts, 224 So.2d 706 (Fla.App.1969); People v. Steinberg, 60 Misc.2d 1041, 304 N.Y.S.2d 858 (City Court 1969); Commonwealth v. Guild Theatre, Inc., 432 Pa. 378, 248 A.2d 45 (1968).

31. Merritt v. Lewis, 309 F.Supp. 1249 (E.D.Cal.1970). This case would not require the judge to view the film at the theater, for to do so would require him to become a "nocturnal movie critic." 309 F.Supp. at 1253. A showing in camera would suffice.

For other possible procedures, see, e. g., Freedman v. Maryland, 380 U.S. 51 at 60–61, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); A Quantity of Copies of Books v. State of Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2nd. Cir. 1969) at 412, cert. denied, 397 U.S. 920, 90 S.Ct. 929, 25 L.Ed.2d 101 (1970); Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802 (M.D.Ala.1969). We express no opinion on the merits of any such alternative plan, deeming it sufficient to rule the procedure in the case at bar inadequate.

32. Several courts have debated the issue of whether illegally seized films need be returned to the owners as "fruits of the poisonous tree." Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802, 822, n. 27 (M.D.Ala.1969); or as involving self-incrimination, People v. DeRenzy, 275 Cal.App.2d 380, 79 Cal.Rptr. 777 (1969). But cf. Judge Pittman's dissent in Entertainment Ventures, Inc. v. Brewer, supra, 306 F.Supp. at 823–824. In both these cases, however, reprosecution was possible under an applicable legal statute. Since there is no such statute in Alaska, see part III, infra, we need not reach this issue. The films in the hands of the police could serve no legal purpose in the case at bar. We, therefore, order their return to the exhibitor from whom they were seized.

## III

We must now determine whether the indictment should be dismissed. Petitioner was charged with contributing to the delinquency of a minor, in violation of AS 11.-40.130(a). This statute reads:

"(a) A person who commits an act, or omits the performance of a duty, which causes or tends to cause, encourage or contribute to the delinquency of a child under the age of 18 years, is guilty of a misdemeanor.

"(b) A person who by threats, command or persuasion endeavors to induce a child under the age of 18 years to perform an act or follow a course of conduct which would cause or manifestly tend to cause him to become or remain a delinquent is guilty of a felony, and upon conviction is punishable by imprisonment for not less than one year nor more than two years."

Delinquency is defined in AS 11.40.150 as follows:

"For the purpose of § 130 of this chapter a child is a delinquent if he is under the age of 18 years and

(1) violates a law of the United States, or the state, or an ordinance of a city or town;

(2) is incorrigible, either at home or in school;

(3) knowingly associates with thieves, vicious or immoral persons;

(4) without just cause and without the consent of his parents, or custodian, absents himself from home or his place of abode;

(5) is in danger of becoming or remaining a person who leads an idle, dissolute, lewd or immoral life;

(6) knowingly frequents a house of ill repute;

(7) knowingly frequents a place where a gaming device is operated;

(8) Repealed by § 2 ch. 43 SLA 1968;

(9) wanders about the streets in the nighttime without being on lawful business or occupation;

(10) habitually wanders about railroad yard or tracks;

(11) habitually uses vile, obscene, vulgar, profane or indecent language;

(12) is guilty of or takes part in or submits to an immoral act or conduct; or

(13) is addicted to the habitual use of intoxicating liquor or a drug."

Petitioner contends that the application to him of these statutory provisions is unconstitutional. First, he contends that they might be read as impinging upon First Amendment freedom of expression. But even if not so read, he argues that they are of necessity too imprecise to permit application in this area in which "[p]recision of regulation must be the touchstone * * *." NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963). See also Interstate Circuit, Inc. v. City of Dallas, 390 U.S. 676, 682, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968).

The state replies that it has the power to protect its juveniles, especially from exposure to obscenity. It denies that the statute is unconstitutionally vague on its face or as applied in the instant case. It affirmatively contends that the statute serves a reasonable purpose and provides a rational method of protecting this state's minors.

The state does not allege that the films are "obscene," but asserts that they "have contributed or tend to contribute to the delinquency of local young people wholly apart from the question of whether such films are per se obscene. * * * [T]he ultimate and only relevant question to resolve is whether the showing of these films to the children named in the indictment contributed or tended to contribute to the delinquency of those minors. * * *"

The state is correct, of course, in arguing that it has the power to enact statutes to limit the access of juveniles

within the state to obscenity. Such statutes may make it a crime to give, sell or display obscene materials to minors. Interstate Circuit, Inc. v. City of Dallas, *supra;* Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); Karalexis v. Byrne, 306 F.Supp. 1363 (D.Mass. 1969), injunction stayed pending appeal, 396 U.S. 976, 90 S.Ct. 469, 24 L.Ed.2d 447, 486 (1969).[33] The material need not be so obscene as to be proscribed for the general population in order to be forbidden to minors. As the Oregon Supreme Court stated:

"Although material alleged to be obscene must generally be judged on the basis of its appeal to the average member of the community, we think it may be judged by its appeal to a special audience—for example, children—if it clearly is aimed at such an audience. [Citation omitted.] In such a case, the federal constitution would probably require a strong showing that the material is in fact directed solely or chiefly at a special group. Butler v. State of Michigan * * * 1957, 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412." State v. Jackson, *supra*, 356 P.2d at 507.

■ Statutes punishing contributing to the delinquency of a minor may be drafted for such a purpose.

Many contributing statutes, like ours, were written to protect juveniles—to prevent as well as punish delinquency. Anderson v. State, 384 P.2d 669 (Alaska 1963). See also State v. Crary, 80 Ohio Law Abst. 417, 155 N.E.2d 262, 264 (Ct. of Com. Pleas 1959); State ex rel. Berry v. Superior Court, 139 Wash. 1, 245 P. 409, 45 A.L.R. 1530 (1926); note, 18 A.L.R. 3rd 824. However, the fact that the state can enact a statute to protect juveniles against exposure to obscenity is not enough. To be validly applied in such an instance, the statute must meet constitutional requirements of precision and specificity.

We start with the well recognized proposition that criminal statutes in general must be strictly construed. If the statute threatens free expression, strict construction is all the more necessary. We believe that the test employed by the majority and dissenting members of the United States Supreme Court in United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947), must be passed before a criminal statute can be applied to limit free expression.

In *Petrillo* a criminal statute was challenged on its face as being so vague that it violated the First Amendment's guarantee of free speech. The court said that the test of unconstitutional vagueness would be "whether the contested section is written so vaguely and indefinitely that one whose conduct it affected could only guess what it meant." 332 U.S. at 6, 67 S.Ct. at 1541. The court went on to hold the statute must

33. Karalexis applied Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), to enjoin prosecution of a motion picture exhibitor under the Massachusetts obscenity statute. The court stated:

"It is difficult to think that if Stanley has a constitutional right to view obscene films, the Court would intend its exercise to be only at the expense of a criminal act on behalf of the only logical source, the professional supplier. A constitutional right to receive a communication would seem meaningless if there were no coextensive right to make it. *Cf*. Griswold v. Connecticut, 1965, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510. If a rich Stanley can view a film, or read a book, in his home, a poorer Stanley should be free to visit a protected theater or library. We see no reason for saying he must go alone." 306 F.Supp. at 1366–1367 [footnotes omitted].

The court, however, took particular note that the possible offensiveness of the film was advertised. There was no pandering outside the theater. The theater was policed. No minors were permitted to enter. Stanley itself had warned of the dangers of obscenity falling into the hands of children. The court indicated that its holding would not apply to one who distributes pornography to "children or creates a clear public nuisance" and was prosecuted under the same obscenity law. 306 F.Supp. at 1367.

mark the boundaries of permissible conduct with sufficient clarity for both judges and juries to administer the law fairly and in accordance with the legislative intent. 332 U.S. at 7, 67 S.Ct. 1538. Justice Reed, dissenting, added one more criterion which we think wise to include. This is that the public may not be required to go beyond its "background of experience and common understanding" to construe the statutory language. 332 U.S. at 16, 67 S.Ct. at 1546 (Reed, J., dissenting). See also NAACP v. Button, *supra;* Hiett v. United States, 415 F.2d 664 (5th Cir. 1969), cert. denied, 397 U.S. 936, 90 S.Ct. 941, 25 L.Ed.2d 117 (1970); Entertainment Ventures, Inc. v. Brewer, *supra;* State v. Locks, 97 Ariz. 148, 397 P.2d 949 (1964). The judiciary of our own state has applied such a test on many occasions. See, *e.g.,* Harris v. State, 457 P.2d 638, 640–641 (Alaska 1969); Nelson v. State, 387 P.2d 933, 934–935 (Alaska 1964); United States v. Meyers, 143 F. Supp. 1, 4, 16 Alaska 368, 374 (1956).

That the purpose of the statute is to protect juveniles is irrelevant. As the Supreme Court said in Interstate Circuit, Inc. v. City of Dallas, *supra,* 390 U.S. at 689, 88 S.Ct. at 1306:

"Nor is it an answer to an argument that a particular regulation of expression is vague to say that it was adopted for the salutary purpose of protecting children. The permissible extent of vagueness is not directly proportional to, or a function of, the extent of the power to regulate or control expression with respect to children."

Indications that AS 11.40.150 is not fatally vague on its face are found in Anderson v. State, *supra;* Etherton v. United States, 249 F.2d 410, 17 Alaska 274 (9th Cir. 1957), cert. denied, 355 U.S. 919, 78 S. Ct. 349, 2 L.Ed.2d 278 (1958); and United States v. Meyers, *supra.*

In this case petitioner mainly does not attack the constitutionality of the statute as written, but rather its particular application to him.

Statutes similar to AS 11.40.130 and AS 11.40.150 have been held unconstitutionally vague when applied to the prosecution of a motion picture exhibitor. Recently in Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802 (M.D.Ala.1969), a three-judge federal court sitting in Alabama's Middle District construed an Alabama statute which made it a misdemeanor to contribute to the delinquency of a minor.[34] "Delinquency" was defined in a second statute.[35] Judge Rives held that:

"Such a criminal statute is too vague and imprecise to punish an individual

---

34. Title 13, Section 350(3) of the 1940 Code of Alabama defines "delinquent child" as:

"any child who while under sixteen years of age violates any penal law of the United States or of this state, or any regulation, ordinance or law of any city, town or municipality, or who commits any offense or act for which an adult could be prosecuted in a method partaking of the nature of a criminal action or proceeding; or who is beyond the control of his parent, parents, guardian, or custodian, or who is otherwise incorrigible, or who is guilty of immoral conduct; or who is leading an idle, dissolute, lewd or immoral life; or who engages in any calling, occupation or exhibition punishable by law or is found in any place for permitting which an adult may be punished by law."

Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802, 818, n. 24 (M.D.Ala. 1969).

35. Alabama Act No. 250 (Acts of Alabama 1959, Vol. 1, p. 810), as amended Alabama Act No. 100 (Acts of Alabama 1965, Vol. 1, p. 152). This statute makes it

"unlawful for any person 'to aid, encourage, or cause any child * * * to become or remain delinquent, or by words [or] acts * * * induce or endeavor to induce, aid or encourage any child * * * to do or perform any act or to follow any course of conduct which would cause * * * such child to become or remain dependent, neglected, or delinquent * * * or to encourage * * * such child to do or perform any act or to follow any course of conduct which would cause or mani-

who is exhibiting a motion picture film. * * * Phrases, such as 'to cause any child to become delinquent,' 'to induce, aid or encourage any child,' 'otherwise incorrigible,' 'guilty of immoral conduct,' 'leading an idle, dissolute, lewd or immoral life,' cannot meet the strict standard of specificity required in a criminal statute affecting expression protected by the first amendment. *See* Ashton v. Kentucky, [384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469] *supra;* Dombrowski v. Pfister, *supra;* Smith v. California, [361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205] *supra.* It is not inconceivable that the State under this statute might attempt to punish exhibition of films depicting violence or of films teaching a particular political philosophy. Assuming, however, that the State will limit prosecutions under this 'contributing to the delinquency of a minor' statute to exhibition of films claimed to be obscene, the statute is entirely too imprecise to be constitutionally so applied. * * *

* * * * * * * * * A state * * * may not use a vague and imprecise 'contributing to the delinquency of a minor' statute to protect its minors from such allegedly harmful expression." Entertainment

festly tend to cause such child to become or remain dependent, neglected or delinquent * * *.' "

Ventures, Inc. v. Brewer, 306 F.Supp. 802, 819–820 (M.D.Ala.1969).

AS 11.40.130 similarly provides, among other things, that no person may commit an act which "causes or tends to cause, encourage or contribute" to a child's delinquency. In defining delinquency, AS 11.40.150 uses terms such as "incorrigible," "knowingly associates with * * * vicious or immoral persons," "leads an idle, dissolute, lewd or immoral life," "immoral act or conduct."

We do not view the case before us as one in which we must interpret the statutes as they might apply to conduct other than constitutionally protected expression. It must be recognized that we are here dealing with an act which is within First Amendment protection. We do not hold that the broad language of AS 11.40.130, 11.40.150 is unconstitutional on its face. We merely hold that its application in this instance is not constitutionally permissible. If the state were allowed to apply these statutes under such conditions, it would amount to a virtual cancellation of the First Amendment's cherished area of protection.

For these reasons the motion to dismiss the indictment should be granted.

Reversed.

Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802, 819 (M.D.Ala. 1969).